296 So.2d 152

**Billy H. O'BARR**

v.

**Dr. Fredric W. FEIST.**

**SC 335.**

Supreme Court of Alabama.

June 6, 1974.

William M. Acker, Jr., and George R. Stuart, III, Birmingham, for appellant.

Ted R. Coggin and Curtis Wright, Gadsden, for appellee.

McCALL, Justice.

Billy H. O'Barr, the appellant, sued the appellee, a physician, for damages arising out of his alleged wrongful commitment to Bryce Hospital at Tuscaloosa, a state mental hospital. At the close of the evidence, the trial judge gave written instructions as to all counts in the complaint, directing the jury to return a verdict for the defendant physician. The appellee pleaded in short by consent the general issue.

Count B of the amended complaint claims in libel against the appellee for falsely and maliciously publishing of and concerning the appellant a written document filed in the probate court, which is a letter that reads as follows:

"February 19, 1968

"The Honorable Wiley J. Hickman
Probate Judge, Etowah County
Etowah County Courthouse
Gadsden, Alabama

"Re: Mr. Bill O'Barr

"Dear Judge Hickman:

"I have seen this man in the past for nervousness.

"According to his wife and mother-in-law he is said to be drinking and threatening to his family.

"I feel that admission to Bryce Hospital for evaluation and treatment would be of value.

"Sincerely,

"Fredric W. Feist

"FREDRIC W. FEIST, M. D.

"FWF:mmc

Count B also alleges that the defendant published the letter with intent to defame the appellant and that as a proximate result of the letter he was arrested, jailed and sent to Bryce Hospital for approximately two weeks.

The record discloses that the letter in question was considered by the judge of probate in the wife's application to him, and in making his application to Bryce for the appellant's admission there as a patient. The judge of probate noted, in a written "Statement Of Events Leading Up To Commitment" of the appellant, which is in evidence, that he made his application for appellant's admission to Bryce after visits "on several different occasions" by the appellant's wife and mother-in-law, "and on one or more occasions accompanied by [the wife's] father," all testifying that the appellant was deranged, and that they feared for his life because of suicide threats and for Mrs. O'Barr's and the childrens' lives because of threats of murder. The probate judge said that upon weighing these testimonies along with the doctor's certificate, he made the application to Bryce Hospital.

Code of Ala., Tit. 45, § 208, requires that the judge of probate shall investigate the case. The two controlling statutes for commitment to state mental hospitals are §§ 208 and 210, Code of Ala., Tit. 45. They provide as follows:

"§ 208. Application to and of probate judge for admission of patient; contents of.—When a relative, friend, or other party interested desires to place a person as a patient in one of the state hospitals, he shall apply to the judge of probate of the county in which the person resides, and the judge of probate, without delay, shall investigate the case, by examining witnesses, or not, as he sees fit, and, if he is reasonably convinced that the case is a suitable one, he shall make application to the superintendent at Tuscaloosa for his, or her admission, and shall accompany his application with as full and as explicit answers as possible to the following interrogatories describing the case: * * *."

"§ 210. Certificate of probate judge for admission of patient; form and contents of.—When informed by the superintendent that the person can be received as a patient, the judge of probate shall examine witnesses, at least one of whom shall be a physician, and fully investigate the facts of the case, either with or without a jury, and either with or without the presence in court of the person, the grade of whose mental disqualification is under investigation, according to his discretion; and if the judge, or the jury, as the case may be, believe that the person is sufficiently defective mentally to be sent as a patient to a hospital for insane persons, the judge of probate shall make two copies of a certificate of mental disqualification, one copy of which shall be filed in his office and the other he shall send with the patient to the hospital; which certificate shall read substantially as follows: * * *."

Section 210 then directs the probate judge to certify that he has called before him witnesses and a reputable physician and has examined them under oath, and further certify that sufficient proof has been adduced to satisfactorily show that the person is so defective mentally that he ought to be committed.

■ In our investigation we find that the action of the probate court on the application for commitment is a judicial function. In so holding, the court in Perkins v. United States Fidelity and Guaranty Co., 433 F.2d 1303 (5th Cir. 1970), observed:

" * * * In Rainey v. Ridgeway, 151 Ala. 532, 43 So. 843 (1907) it was said:

" 'Judicial power is authority, vested in some court, officer, or person, to hear and determine, when the rights of persons or property, or the propriety of doing an act, are the subject-matter of adjudication. Official action, the result

of judgment or discretion, is a judicial act. The duty is ministerial, when the law, exacting its discharge, prescribes and defines the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion. Official action, the result of performing a certain and specific duty arising from fixed and designated facts, is a ministerial act.' "

Therefore under the undisputed evidence, the letter was written with reference to a judicial proceeding.

█ The question of whether the communication was privileged or not by reason of its character, or the occasion on which it was made, is a question of law to be decided by the court. Kenney v. Gurley, 208 Ala. 623, 95 So. 34; Interstate Electric Co. v. Daniel, 227 Ala. 609, 151 So. 463.

█ Privileged communications are divided into two classes, namely, those which are absolutely privileged and those which are qualifiedly or conditionally privileged. In cases where absolute privilege obtains there is no liability. Depending upon the circumstances of the case, there may or may not be liability with respect to qualifiedly or conditionally privileged communications. The distinction between the two classes is said to be that the protection of absolutely privileged communications is not at all dependent upon their bona fides, while qualifiedly or conditionally privileged communications are merely freed from the legal imputation of malice, and become actionable only by virtue of the existence of express malice. Adams v. Alabama Lime & Stone Corp., 225 Ala. 174, 142 So. 424; Lawson v. Hicks, 38 Ala. 279, citing Cooke on Defamation, 28, 31, 60, and Starkie on Slander, 229, 292.

With respect to what are absolutely privileged communications, we made this observation in the case of Tonsmeire v. Tonsmeire, 281 Ala. 102, 199 So.2d 645:

"In defamation, the only absolutely privileged communications are those made in the course of legislative or judicial proceedings, and acts of state made under authority of law. See 33 Am.Jur. Libel and Slander, Sec. 125."

In 50 Am.Jur.2d Libel and Slander, § 193, p. 696, it is stated:

"An absolutely privileged communication is one in respect of which, by reason of the occasion on which, or the matter in reference to which, it is made, no remedy can be had in a civil action, however hard it may bear upon a person who claims to be injured thereby, and even though it may have been made maliciously, and is false. To make the defense of absolute privilege available, the communication must be made on a privileged occasion; the circumstances under which the defamatory language is used are the occasion, and it is the occasion that is privileged. The privilege is a matter of public policy, and is not intended so much for the protection of those engaged in the public service and in the enactment and administration of law, as for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for the recovery of damages."

In *Lawson*, supra, at page 285, the court said:

"To the catalogue of absolutely privileged communications belong all words spoken or written by the court, the parties, or the counsel, in the due course of judicial proceedings, which may be relevant. The relevancy, or pertinency, of the calumnious matter is indispensible to its perfect and absolute freedom from all actionable quality; and being relevant, it can give rise to no civil responsibility, no

matter how great the malignity or malice from which it may have originated. * * *."

This court stated in Adams v. Alabama Lime & Stone Corp., 225 Ala. 174, 142 So. 424, that the Court of Appeals of New York in Moore v. Manufacturers Nat. Bank, 123 N.Y. 420, 25 N.E. 1048, 1049, well and concisely stated the American rule and the underlying principle, in the following language:

" 'There is another class of privileged communications where the privilege is absolute. They are defined in Hastings v. Lusk, 22 Wend. [N.Y.] 410, 34 Am. Dec. 330. In this class are included slanderous statements made by parties, counsel, or witnesses in the course of judicial proceedings, and are libelous charges in pleadings, affidavits, or other papers used in the course of the prosecution or defense of an action. In questions falling within this absolute privilege the question of malice has no place. However malicious the intent, or however false the charge may have been, the law, from considerations of public policy, and to secure the unembarrassed and efficient administration of justice, denies to the defamed party any remedy through an action for libel or slander. This privilege, however, is not a license which protects every slanderous publication or statement made in the course of judicial proceedings. It extends only to such matters as are relevant or material to the litigation, or, at least, it does not protect slanderous imputations plainly irrelevant and impertinent, voluntarily made, and which the party making them could not reasonably have supposed to be relevant.'

"This court, in its early history, adopted the rule as above announced, and in harmony with the weight of authority in America. Lawson v. Hicks, 38 Ala. 279, 81 Am.Dec. 49 * * *."

■ The statements which are complained about were certainly responsive to the issue in the cause before the probate court. Also, the statements were given in a judicial proceeding, so we conclude that they enjoy absolute privilege similar to that of testimony obtained in answers to questions asked a witness.

The following principle, in regard to the defamatory nature of such reports, is set forth in 73 A.L.R.2d 324, 333, viz:

"The general rule that otherwise defamatory statements made in testimony, pleadings, or other papers in judicial proceedings are absolutely privileged, if material to the inquiry, has been applied in a number of actions against physicians for defamation by an affidavit, certificate, or testimony given in connection with a proceeding to commit an alleged lunatic to a mental institution."

See 50 Am.Jur.2d, Libel and Slander, § 250, p. 768, where this is stated:

"Although it is said that the immunity of a witness is more extensive if his testimony is in response to questions asked of him, it is established that if given in a judicial proceeding, voluntary testimony of a witness, not given in response to questions, is privileged absolutely if it is pertinent, even though it is given maliciously. And it seems that material testimony in a judicial proceeding is privileged even though made by one who is not brought in to testify under process of court. * * *."

■ The question of the relevancy of the communication is a matter for the determination of the court, and the adjudicated cases have established a liberal view in the interpretation of the language used, and all doubts are resolved in favor of its relevancy or pertinency. Adams v. Alabama Lime & Stone Corp., supra.

■ The appellant states in his brief that the notation "FWF:mmc" in the lower left of the letter shows that the appellee dictated the letter to his secretary who transcribed it; and, he submits that under

Berry v. City of New York Ins. Co., 210 Ala. 369, 98 So. 290, Ferdon v. Dickens, 161 Ala. 181, 49 So. 888, Mims v. Metropolitan Life Ins. Co., 200 F.2d 800 (5th Cir. 1952), cert. den., 345 U.S. 940, 73 S. Ct. 831, 97 L.Ed. 1366, such was a publication of the libel to the secretary.

We have read the record and do not recall finding where the appellant called upon the trial court to take judicial notice of the function and meaning he has accorded this alphabetical notation, "FWF:mmc," even if its function and meaning is a proper subject of judicial notice. Since this was not done in the trial court, we will not undertake to apply the principle of judicial notice.

In the case of Byrd v. State, 212 Ala. 266, 269, 102 So. 223, 227, we held:

"It is generally held that taking judicial . notice of facts of common knowledge is in the discretion of the trial court, and that, on appeal, the record should show that the trial court had the matter of judicial notice called to his attention in order to bring under review his action thereon. 15 R.C.L. 1063. This rule is in support of the presumption in favor of the court's finding, unless error is affirmatively shown. * * *."

■ While courts may take judicial notice of matters of common knowledge without suggestion by counsel, Weaver v. United States, 298 F.2d 496 (5th Cir. 1962), where the trial court did not do so, and the appellant did not suggest that the trial court do so, we are unwilling to reverse the trial court for not having done so. See 113 A.L.R. 259 and The Law of Evidence in Alabama, McElroy, 2d Ed., Vol. 3, § 480.01, p. 326. To reverse would result in our deciding an issue not presented, nor considered or decided by the trial court. In such instances we have held that we would not reverse a case. Cox v. Howard Hall Co., 289 Ala. 35, 265 So.2d 580; Prestwood v. Ivey, 275 Ala. 336, 154 So.2d 921; Southern Cement Co. v. Patterson, 271 Ala. 128, 122 So.2d 386.

The appellant argues that the facts support his Count C, which charges false imprisonment. His reasoning is that in order for an arrest for commitment to be lawful, the judge ordering such must have jurisdiction, and that to have jurisdiction, the probate court must act in strict accordance with the statutes, it being a court without original jurisdiction in such a cause. He maintains that the probate judge failed to comply with the statute by not examining the appellee physician under oath and that this deprived the court of jurisdiction.

Code of Ala., Tit. 45, § 210, supra, provides in part that the judge of probate shall examine witnesses, at least one of whom shall be a physician, and fully investigate the facts of the case, and that the judge shall certify that he has called before him credible witnesses and a reputable physician and has examined them under oath. The appellant argues that, not having complied with the statutory prerequisites, the probate court was without legal authority or jurisdiction to order the arrest of the appellee. Then, in arriving at his theory of the physician's liability, the appellant states in his brief as follows:

"* * * Dr. Feist admitted he knew of the proper commitment procedures and admitted that he knew the procedure actually used and that his letter would have the effect it had. For his knowing participation in the illegal proceeding and wrongful commitment of a man he knew not to be mentally ill, Dr. Feist is potentially liable for false imprisonment. * * *."

As we understand it, the appellant seeks to recover from the physician on the theory that the judge's order of arrest was void, because the probate court was without jurisdiction to enter it, and, that the appellee's letter was a participation in a known illegal proceeding, resulting in the physician's liability for false imprisonment of the appellant. We disagree.

■ Courts of probate in this state are not courts of special or limited jurisdiction

in the matter or proceedings to commit insane persons to state mental hospitals in pursuance of statutes, Code of Ala., Tit. 45, § 204 et seq. In such cases, they are courts of original and general jurisdiction. Code of Ala:, Tit. 13, § 278. See the case of Perkins v. United States Fidelity and Guaranty Co., 433 F.2d 1303 (5th Cir. 1970).

It follows that the order of the court to arrest the appellant on the lunacy warrant was not void. The court had jurisdiction over the commitment proceedings and over the appellant. As stated in Headley v. Ball, 284 Ala. 488, 226 So.2d 90:

"* * * When the judge entered the order, he was acting as judge and was entering an order which he had authority to enter even though he may have acted erroneously when he did so. [which we do not decide in this case] * * *."

In Perkins v. United States Fidelity and Guaranty Co., 433 F.2d 1303 (5th Cir. 1970), the plaintiff in a damage suit against the probate judge for wrongful commitment alleged that no hearing was had and that he received no notice of the proceedings. The probate judge had signed a certificate of mental disqualification and ordered him committed. In that case the court said:

"* * * Assuming that the probate judge did not provide appellant with all of the procedural safeguards provided in the statute (a question which we do not decide), that would not destroy the jurisdiction of the court to hear and decide the case. Cf. Headley v. Ball, 284 Ala. 488, 226 So.2d 90 (1969)."

Since the order of arrest was not void, the letter cannot be construed as a participation in an illegal proceeding on the premise advanced by the appellant. The appellant's contention that the appellee is liable for false imprisonment must therefore fail.

The gravamen of Count D is that the appellant's relatives, who desired to have him committed to Bryce Hospital, requested the appellee to direct a letter to the probate judge so that he would commit the appellant to the hospital, that the appellee wrote the letter (the one here in question) and gave it to the appellant's relatives knowing full well that they could not have him committed to Bryce Hospital without the letter, or the testimony of a physician, and knowing full well that the probate judge would commit the appellant upon the letter. The count then charges that the letter was deliberately false and misleading in that the admission of the appellant to Bryce for evaluation and treatment would be of no value, that the appellee was negligent in writing the letter, and negligently failed to make due inquiry as to whether appellant's commitment would be of value, that the appellee had not seen or communicated with the appellant for more than two months prior to writing the letter, which was written prior to the institution of any commitment proceeding. Appellant then avers that as a proximate consequence of the negligence aforesaid, he was admitted to the hospital while sane and suffered the damages alleged.

The appellant maintains that the evidence submitted was sufficient to support the allegations of negligence and proximate cause and that it was error to have given the affirmative charge as to this count.

Whether or not the proof offered showed negligence we need not decide. The letter is clear and unambiguous in its language and meaning. In it the appellee states to the probate judge that he has seen the appellant in the past for nervousness, the kind and extent of which he does not disclose, that the appellant's wife and mother-in-law said he was drinking and threatening his family, and that he (the appellee) feels that the admission of the appellant to Bryce Hospital for evaluation and treatment would be of value. The letter amounts to a medical opinion and re-

port to the probate judge. It was used as evidence in the case. The very import from the language of the letter leaves to the probate judge the ultimate decision of whether he will order the appellant admitted to Bryce Hospital or not.

We think that the statutes for commitment place the decision making power entirely within the sound discretion of the probate judge. It is by his hand that the order is made. The physician is no more than a witness in the proceeding and he has no authoritative means to foretell that the probate judge will act in accordance with his report and commit the appellant. The judge is free of any obligation to follow the physician's conclusions. The language of the statutes, Code of Ala., Tit. 45, § 205, as well as §§ 208 and 210, supra, makes the probate judge a free agent and charges him with the duty and responsibility of ascertaining and adjudging whether or not a person is sufficiently deficient or defective mentally to require that he be moved to a mental hospital. Section 205 expressly provides:

"A person shall be adjudged insane who has been found by a proper court sufficiently deficient or defective mentally to require that, for his own or others' welfare, he be moved to the insane hospital for restraint, care and treatment. Whether the person's mental abnormality is sufficiently grave to warrant such procedure is always the question to be decided by the court."

In the above cited case of Perkins v. United States Fidelity and Guaranty Co., supra, the court recognized this grave responsibility as belonging to the probate judge, when it said:

"We doubt the existence of many situations calling for more judicial discretion and decision-making talent than in the determination of the competency of a human being. The task calls for the court to look into the mind of an individual and determine his mental state under rules which are vague, difficult to apply, and necessarily imperfect. The function involved is unquestionably judicial in nature. See in this regard Headley v. Ball, supra; Pickett v. Richardson, 1931, 223 Ala. 683, 138 So. 274; Broom v. Douglass, supra."

Where judicial discretion exists, no one knows full well what a judge may decree. They may very well surmise, but those who do, sometimes find themselves mistaken.

Our opinion is that the probate judge's order of commitment under the controlling statutes was the primary and efficient cause for the appellant's being sent to Bryce Hospital, not the evidence given in the case by the physician or any other witness. The judge must depend on evidence to make his decision, but his decision is his own act that brings about the results.

In Rhiver v. Rietman, 148 Ind.App. 266, 265 N.E.2d 245 (1970), the appellant alleged that the appellee doctor at the request of the appellant's wife, carelessly and negligently made and rendered a medical opinion and report to the effect that the appellant was in such a condition mentally that he should be institutionalized for treatment. The appellant was ordered committed to a hospital where he underwent observation until his release two days later. On appeal, the court, in addressing itself to the law that, to be actionable, negligence must be the proximate cause of the plaintiff's injuries, said:

"It is a universally recognized principle that recovery upon a negligence theory requires proof of the tort[-]feasor's act, or failure to act, as a proximate cause of plaintiff's injuries. No less a standard is required where negligence is allegedly involved in mental illness commitment proceedings. It thus becomes the burden of the plaintiff to show an unbroken chain of events from the negligence of the physician to the commitment of the plaintiff. In this case the appellee argues that negligence, if any, of a reporting physician can not be the

proximate cause of a plaintiff's injuries since the chain of events is necessarily interrupted by an efficient intervening cause in the person of the committing judge.

"The responsibility for determination of a citizen's need for institutional mental treatment has been placed by the Indiana Supreme Court in the committing judge. In Re Mast (1940), 217 Ind. 28, 31, 25 N.E.2d 1003. The Supreme Judicial Court of Massachusetts, in dealing precisely with the relation of the judge to the commitment, stated in Mezullo v. Maletz (1954), 331 Mass. 233, 118 N.E. 2d 356, 357, supra:

" '* * * although the certificate of the examining physicians in a commitment proceeding is intended to, and does in practice, have great weight, a commitment cannot take place without an order from the judge, and a finding by him that the person committed is insane. * * *'

"The judge was thus concluded to be an efficient intervening cause, in denial of plaintiff's right to recovery in negligence:

" '* * * It is difficult to see, therefore, how, assuming that there was negligence in the examination, and that the certificate was false, it can be said that that was the proximate cause of the commitment. * * *' 118 N.E.2d 356, 358 (quoting from Niven v. Boland [1900], 177 Mass. 11, 58 N.E. 282, 283)

"We subscribe to the wisdom and correctness of that decision."

We conclude that the affirmative charge as to Count D was properly given; and, for the same reason, there was no error in giving a similar charge as to Count E of the complaint, which purports to allege willfulness and wantonness.

In view of the result we have reached, we see no occasion to write to the issues of the sufficiency of the appellee's pleas Three and Four as tested by the appellant's

demurrer which was overruled. The judgment is affirmed.

Affirmed.

COLEMAN, J., concurs.

MERRILL, BLOODWORTH, FAULKNER, and JONES, JJ., concur specially.

HARWOOD and MADDOX, JJ., concur in the result.

HEFLIN, C. J., not sitting.

BLOODWORTH, Justice (concurring specially).

I concur in those portions of Mr. Justice McCALL'S opinion dealing with the libel and false imprisonment counts. I concur in the result with respect to the other counts, as I do not wish to be understood as retreating from either the positions I took, or from the opinions I expressed, in my special concurrence in Phillips v. Giles, 287 Ala. 469, 252 So.2d 624 (1971), (dealing with commitment of insane persons), in my opinion for the Court in Lawson v. General Telephone Company of Alabama, 289 Ala. 283, 267 So.2d 132 (1972) (dealing with proximate cause), or in my dissent in City of Mobile v. Havard, 289 Ala. 532, 268 So.2d 805 (1972), (dealing with proximate cause).

MERRILL and JONES, JJ., concur.

JONES, Justice (concurring specially).

I concur in the result reached in the majority opinion in its holding that the trial Court did not err in the giving of written instructions as to all counts in the complaint, directing a verdict for the defendant. My reason for so concluding is limited to that portion of the majority opinion which discusses the two classifications of privileged communications. I agree with the categoric and unequivocal statement contained in the majority opinion: "In cases where absolute privilege obtains there is no liability."

The language quoted from 50 Am.Jur.2d, Libel and Slander, along with the language from *Lawson,* 289 Ala. at page 285, 267 So.2d 132, make clear the policy reasons for the absolutism of such rule and the condition of relevancy in order for the testimony to gain the status of privileged communications.

Here, the doctor's letter, at least insofar as the doctor was concerned, constituted testimony in a judicial proceeding and its content was fully relevant and material to the litigation at hand. If the law, from considerations of public policy, extends its umbrella of immunity from civil liability to the most slanderous statements made in the course of judicial proceedings insofar as civil actions for libel and slander are concerned, then lesser degrees of culpability for the commission of the same offense must of necessity come under the same protection. This means that Count D (negligence) and Count E (wantonness) are subject to the same defect as Counts B (libel) and C (false imprisonment).

It should be pointed out that not every such action for negligence (nor for that matter every action for libel) would be protected against civil liability by the "absolutely privileged" rule. The "relevancy" test is always applicable. Suppose, for example, the physician, through an act of negligence, reported to the court on the wrong patient, thereby leading to the confinement in the mental institution of the wrong person. In such instances the relevancy test removes the cloak of immunity and an action for negligence would lie.

There is another aspect of this case (referred to earlier by inference) which, admittedly, makes this case extremely close as to the validity of the negligence and wantonness counts. The doctor's letter, or the substance thereof, was not given as testimony in open court. Indeed, the letter was not even sworn to. Additionally, the record of the proceedings in the probate court, save a memorandum by the probate judge prepared well after the fact, fails to disclose anything which could comport to a judicial proceeding. One could not ascertain from the official court file (of which the probate judge's later memorandum is not properly a part) that the jurisdiction of the probate court had been invoked. To put it in the mildest terms possible, serious considerations are raised as to the validity of the proceedings resulting in the commitment order of this plaintiff to Bryce Hospital. Under such circumstances, i. e., in the absence of a showing that the jurisdiction of the court had been invoked, the judge himself may be outside the immunity doctrine and liable personally for his conduct.

Nevertheless, I am constrained to the conclusion that the test as to whether the "absolutely privileged" rule is here applicable must be viewed from the perspective of the physician in his writing and furnishing this letter to the probate court. Certainly, as far as he was concerned, Dr. Feist had every right to assume that his letter to Judge Hickman was being furnished to the court in a matter in which its jurisdiction had been invoked and that his letter was to constitute testimony in a legal proceeding.

Having so concluded, I would not reach the other points discussed in the majority opinion and I would agree with the reservations expressed by Justice BLOOD-WORTH in his special concurring opinion.