Plaintiff-appellant, Landon Browning filed a libel suit against the Birmingham News Company, its publisher, Clarence Hanson, and a staff writer, Tom Bailey. These defendants will be referred to at times in this opinion as the News defendants. Also joined as defendants in the suit were the City of Tarrant and its mayor, Evan Veal, who will be referred to as the Tarrant defendants. Both the News defendants and the Tarrant defendants filed motions to dismiss.
The News defendants filed an affidavit by Tom Bailey, the author of the article in question, which in essence stated that no statement in the article was made with the knowledge that it was false or with reckless disregard of whether it was true or false. No other affidavits were filed by any of the parties but the trial court allowed all parties to file briefs prior to his consideration of the motions to dismiss. The trial court then treated the motions to dismiss as motions for summary judgment and granted summary judgment as to all the defendants. The trial court did not specify his underlying considerations in finding that there were no genuine issues of material *Page 457 
fact; however, this was not required under Rule 56, ARCP.
In his complaint Mr. Browning alleged that he was libeled by the publication of an article in the July 7, 1975, edition of the Birmingham News entitled "Tarrant Officials Say Taxi Service Bad, Want Upgrade." The entire article was not made a part of the record and is therefore not before this court. However, Browning did include in his complaint the following five paragraphs from the article which he alleged constituted the libel:
 Section 2 — "He said he intended to operate a small fleet of shiny new taxis, open an office on Main Street and offer service like Tarrant had never before experienced.
 Section 3 — "Well, the council was skeptical because the last city taxi company had been an exclusive sort of thing that operated on a wing and a prayer. But the councilmen agreed anyway to help the new cab company by at least discouraging other companies.
 Section 4 — "Today, the smooth-talking businessman has long since gone, the fleet of cars has dwindled to a single cab, and — as Mayor Evan Veal tells it, `We're being deluged with complaints . . . no one likes waiting two hours for a cab.' Section 6 — "`We're going to do all we can to help (the Tarrant Taxicab Co.),' said Veal. `We're going to bring in competition for him so he can either upgrade his service or get out.'
 Section 7 — "The mayor obviously was peeved over the situation, believing that he and other council members had gone out on a limb to favor a local businessman only to see that businessman's business decline and the number of complaints increase."
Browning attached to his complaint copies of written demands for retraction of the alleged libelous article which had been served on all the named defendants. It appears that in response to this demand, The Birmingham News published an article on July 11, 1975 entitled "Competition Not Bothering Tarrant Taxi Businessman." None of the contents of this article have been made a part of the record.
The principal issue before this court is whether the granting of summary judgment for both the News defendants and the Tarrant defendants was proper under the circumstances of this case.
It is, however, appellant Browning's initial contention that the trial court erred in converting the defendants' motions to dismiss into motions for summary judgment. Browning argues that this conversion was in violation of the requirements of Rule 12 (c), ARCP, that all the pleadings must be closed before a trial court can treat a motion for judgment on the pleadings as a motion for summary judgment.
This argument overlooks the fact that the conversion here took place under the following provision of Rule 12 (b), ARCP:
 "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."
There is no showing of an abuse of discretion on the part of the trial judge in not excluding the affidavit of Tom Bailey nor is there a showing that all parties were not allowed an opportunity to present all pertinent materials in regard to the motion. Thus there was no error in converting the "motions to dismiss" into summary judgment motions. There was also no error in the trial court's granting the Tarrant defendants' motion for summary judgment.
Rule 56, ARCP, provides that a motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. This court has also stated that the burden is upon the moving party to clearly show that *Page 458 
the other party could not recover under any discernible circumstances. Folmar v. Montgomery Fair Company, 293 Ala. 686,309 So.2d 818 (1975). The movant's burden is substantially increased by the scintilla of evidence rule which requires that if there is a scintilla of evidence supporting the position of the party against whom the motion for summary judgment is made, then summary judgment may not be granted. Loveless v. Graddick,295 Ala. 142, 325 So.2d 137 (1975).
The Tarrant defendants and the News defendants both present the argument that Mayor Veal was cloaked with a privilege in making the comments attributed to him in the July 7th News
article. They argue first that this privilege is "absolute" and therefore he is immune from a defamation suit as is any newspaper which reports such statements. Defendants cite the case of Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335,3 L.Ed.2d 1434 (1959), as authority for this contention.
We are not persuaded by this argument and reiterate that in this jurisdiction, the only absolutely privileged communications recognized under the law of defamation are those made during legislative or judicial proceedings, or contained in legislative acts of this state which are made under authority of law. O'Barr v. Feist, 292 Ala. 440, 296 So.2d 152
(1974); Tonsmeire v. Tonsmeire, 281 Ala. 102, 199 So.2d 645
(1967).
Alternatively, the defendants contend that Mayor Veal had a "qualified" privilege to make these remarks. The test for determining if a communicating party has a conditional or qualified privilege was most recently set forth by this court in Willis v. Demopolis Nursing Home, Inc., Ala., 336 So.2d 1117
(1976).
 "`Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. * * * The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken.'" [Emphasis added.]
 336 So.2d at 1120, quoting Berry v. City of New York Ins. Co., 210 Ala. 369, 98 So. 290 (1923).
This court in Willis v. Demopolis Nursing Home, Inc., supra, also held that the question of whether a communication is privileged by reason of its character or by reason of the occasion on which it was made is a question of law.
The communication directly attributed to Mayor Veal in theNews article is found in sections 4 and 6 of the article and is as follows:
 "We're being deluged with complaints . . . no one likes waiting two hours for a cab . . . we're going to do all we can to help. We're going to bring in competition for him so he can either upgrade his service or get out."
Under the circumstances of this case, Mayor Veal's communication, quoted above, was conditionally privileged. As a result, the law in this state required that in order for Browning to have stated a cause of action against the Tarrant defendants it was necessary for him to have alleged and proved actual malice. Willis v. Demopolis Nursing Home, Inc., Ala.,336 So.2d 1117 (1976); O'Barr v. Feist, 292 Ala. 440,296 So.2d 152 (1974).
Browning neither alleged nor did he offer any proof of actual malice on the part of the Tarrant defendants. Accordingly, the granting of summary judgment for Mayor Veal and the City of Tarrant was appropriate.
The balance of the article, which was not directly attributed to Mayor Veal, cannot be considered as being conditionally privileged in that it appears to be a translation *Page 459 
and interpretation on the part of the News staff writer and amounts to a subjective analysis of a party who is not subject to the privilege. As a result, the granting of summary judgment for the News defendants could not have been properly grounded on privilege.
The News defendants strongly contend that if the words in this article are accorded their natural meaning that the article is not capable of a defamatory meaning as a matter of law. They also argue that the communication is actually no more than rhetorical hyperbole or a vigorous epithet analogous to the communication in Greenbelt Cooperative Publishing Ass'n v.Bresler, 398 U.S. 6, 90 S.Ct. 1578, 26 L.Ed.2d 6 (1970), wherein the U.S. Supreme Court found no defamation. They contend that summary judgment was proper under these circumstances.
The plaintiff argues that, because this article imputed a lack of integrity, competency or fitness in the conduct of his business, it constituted libel per se.
This court, in McGraw v. Thomason, 265 Ala. 635, 93 So.2d 741
(1957), provided the following guidelines for use in determining the actionable character of alleged libelous statements:
 "[T]he printed words are to be taken in their natural meaning, and according to the sense in which they appear to have been used and the idea they are adapted to convey to those who read them. A forced construction is not to be put upon them in order to relieve the defendant from liability, nor are they to be subjected to the critical analysis of a trained legal mind, but must be construed and determined by the natural and probable effect on the mind of the average lay reader."
265 Ala. at 639, 93 So.2d at 744.
Taking these factors into consideration, this court is of the opinion that a genuine issue exists as to whether the contents of this article together with the accompanying headline imputed a lack of integrity, competency, or fitness in the conduct of the plaintiff's business. Thus summary judgment could not have been properly based on this contention of the News defendants.
Before concluding this inquiry into the propriety of the granting of summary judgment for the News defendants, it may be instructive to attempt to capsulize the present state of the law of libel as handed down by the U.S. Supreme Court. In NewYork Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710,11 L.Ed.2d 686 (1964), the Court amended the common law of defamation by establishing a constitutional privilege in order to allow a freer flow of criticism and debate regarding public officials in the discharge of their public duties. This privilege was announced in the following manner:
 "The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with `actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not."
376 U.S. at 279-80, 84 S.Ct. at 726.
In Curtis Publishing Co. v. Butts, 388 U.S. 130,87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), this same privilege was extended to defamatory criticism of "public figures." The definition of public figures which was established by a majority of the Court included persons who do not hold public office but who are "nevertheless intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large."388 U.S. at 164, 87 S.Ct. at 1996.
In the plurality opinion in Rosenbloom v. Metromedia, Inc.,403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), the Court extended the privilege to defamatory falsehoods relating to "private persons" in those situations where the statements concerned matters of general or public interest. In Gertz v.Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789
(1974), however, the Court retreated from this extension of the privilege to private persons, using the rationale *Page 460 
that "the States should retain substantial latitude in their efforts to enforce a legal remedy for defamatory falsehood injurious to the reputation of a private individual."418 U.S. at 345-46, 94 S.Ct. at 3010.
This latitude was restricted in two ways. First, there can be no liability for the libel of a private person unless there is some finding of fault on the part of the publisher or broadcaster. The Court left the development of an appropriate standard for the finding of fault to the individual states. Second, unless liability is based on actual malice, there can be no recovery of punitive or presumed damages and compensatory awards of damages must be supported by competent evidence of injury. The Court's objective here was to limit compensation to actual injury, which in an appropriate case may include mental anguish, embarrassment and other elements of non-monetary damages.
The Court, in Gertz, also expounded upon its prior definition of "public figures" by stating:
 "For the most part those who attain this status [public figure] have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment."
418 U.S. at 345, 94 S.Ct. at 3009.
This definition was recently quoted with approval by the Court in Time, Inc. v. Firestone, 424 U.S. 448, 96 S.Ct. 958,47 L.Ed.2d 154 (1976).
Based on the foregoing U.S. Supreme Court authority it is clear that, unless the defendant is cloaked with privilege, the threshold inquiry in any lawsuit which alleges libel should be: Is the plaintiff who brings the suit a public official, public figure, or private individual? It is only after a determination of this question that the parties may proceed with any degree of certainty as to the standard that will be used in resolving the issue of liability and damages. It has been held that this determination is a question of law. Rosenblatt v. Baer,383 U.S. 75, 88, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966).
The complaint in this case did not offer to categorize the plaintiff as either a private individual, public official or public figure. It is apparent that the trial court considered the plaintiff either a public official or public figure in rendering summary judgment for the News defendants. However, the record before this Court indicates that the trial court did not have sufficient evidence before it to make an informed determination of the plaintiff's status. This Court has often stated that in considering the propriety of the granting of a motion for summary judgment the pleadings will be viewed in the light most favorable to the party opposing the motion. Isbellv. Huntsville, 295 Ala. 380, 330 So.2d 607 (1976); Donald v.City National Bank of Dothan, 295 Ala. 320, 329 So.2d 92
(1976); Loveless v. Graddick, 295 Ala. 142, 325 So.2d 137
(1975). Thus for the purpose of ruling on the motion for summary judgment the trial court should have presumed that because the complaint did not allege actual malice that the plaintiff was a private individual. Of course the defendants in this case were free to offer affidavits in support of their motion to dismiss on the question of the plaintiff's status, but this was not done. Accordingly, summary judgment could not have been properly based on the plaintiff's failure to allege or offer proof of actual malice. Thus we are unable to find any grounds upon which summary judgment for the News defendants could have been based and as to these defendants this case is reversed and remanded.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
BLOODWORTH, JONES, ALMON and EMBRY, JJ., concur. *Page 461