This personal injury case arises from a motor vehicle accident that occurred on May 9, 1988. The plaintiffs, Mary Hayes Henry and Susan Hayes Rogers, sued Randall Paul Butts, alleging that Butts had been negligent and wanton in operating his vehicle and that his negligence and wantonness had caused the accident.
At the close of all the evidence, the trial judge directed a verdict for Butts on the wantonness count, and the jury returned a verdict for Butts on the negligence count. The plaintiffs appeal from the resulting judgment for the defendant. We affirm.
 FACTS
On May 9, 1988, Mary Hayes Henry and Susan Hayes Rogers were injured in an automobile collision on Highway 331 in Luverne, Alabama. Butts presented evidence that Henry was driving at approximately 50 miles per hour in a 35-mph zone when her car collided with Butts's truck as he was attempting to turn left.
During the trial, the judge allowed the investigating officer to testify as to the speed of the plaintiffs' car prior to the accident. Further, during cross-examination and rebuttal, the plaintiffs' attorney attempted to elicit from several witnesses the number of feet in a mile. When the witnesses stated that they did not know how many feet are in a mile, the plaintiffs' attorney asked the trial judge to take judicial notice of the fact that there are 5,280 feet in a mile. The trial judge refused to take judicial notice of that fact.
 ISSUES
This case presents two issues: (1) whether the trial court erred when it allowed the police officer to testify concerning the speed of the plaintiffs' car, and (2) whether the trial court abused its discretion when it refused to take judicial notice of the fact that there are 5,280 feet in a mile.
 EXPERT TESTIMONY
The plaintiffs first argue that the trial court erred by permitting the investigating officer to give his opinion as to the speed of the plaintiffs' vehicle prior to the collision. The plaintiffs assert that the officer's opinion was based only on his assessment of the damage to the vehicle. The plaintiffs then argue that his testimony regarding his assessment of damage was not a sufficient predicate for the admission of the opinion.
The question of whether a particular witness may testify as an expert is largely discretionary with the trial court. The trial court's decision will not be disturbed on appeal except for palpable abuse. Dyer v. Traeger, 357 So.2d 328 (Ala. 1978);Baggett v. Allen, 273 Ala. 164, 137 So.2d 37 (1962); Johnson v.Battles, 255 Ala. 624, 52 So.2d 702 (1951). Where a proper scientific predicate is laid, an expert can testify concerning speed. Baggett, supra, and Jowers v. Dauphin, 273 Ala. 567,143 So.2d 167 (1962). Further, an expert who did not observe a collision may express an opinion as to the speed of a vehicle "predicated on the distance the tires 'skidded' or were dragged along . . . before impact," but the expert cannot testify as to the speed of the vehicle simply by observing the local conditions and viewing the damage to the vehicle. McWhorter v.Clark, 342 So.2d 903 (Ala. 1977), quoting Maslankowski v.Beam, 288 Ala. 254, 264, 259 So.2d 804, 813 (1972); Glaze v.Tennyson, 352 So.2d 1335 (Ala. 1977); Rosen v. Lawson, 281 Ala. 351, 202 So.2d 716 (1967); Jowers v. Dauphin, supra. Finally, skid marks before impact, the point of impact, and the damage to a vehicle are factors upon which an expert can validly predicate an opinion as to speed. Rosen, supra.
In the case at bar, the investigating officer testified as follows:
 "Q. How many years have you been investigating automobile accidents?
"A. Ever since I have been employed, ten years.
 "Q. And, when you investigate an automobile accident, is it part of your job to determine the speed of both vehicles involved in an accident?
"A. I can estimate the amount of speed. *Page 851 
 "Q. What are the ways that you would go about estimating the speed of a vehicle?
 "A. Try to look at the amount of damage that was done, location of the accident, as far as visibility at the time of impact, sometimes skid marks.
". . . .
 "Q. Did you investigate any skid marks at the scene of this accident?
"A. There were some.
". . . .
 "Q. Did you investigate impact damage as done to both vehicles?
"A. I did.
"Q. And, the positioning of those vehicles?
"A. I did.
". . . .
 "Q. Have you ever had any training or any schooling to determine speed of vehicles?
 "A. I have just had the basic police academy training.
 "Q. Did they teach you any kind of special courses on how to determine speed of vehicles in automobile accidents?
"A. The best I can remember, yes, sir.
 "Q. Can you tell me what that entailed? What did your training — What . . . did they teach you on how to determine the speed of vehicles?
 "A. Well, to determine like I stated before on skid marks, a lot of times you can determine by the amount of damage done at the angle of the impact and things like that.
 "Q. What about the amount of movement of the vehicle at the point of impact? Would that determine it?
"A. That would have a factor in it.
 "Q. Okay. Were you able to make a determination after looking at the skid marks and the [distance] the vehicles moved after the point of impact, and also the damage done to the vehicles, were you able to make a determination of the speed of the plaintiffs' vehicle?
"Mr. Tipler: Same objection.
 "The Court: I think he's done enough to open it up; objection overruled.
". . . .
 "Q. Were you able to make a determination of the speed of the plaintiffs' vehicle?
"A. Yes, sir.
"Q. What was the speed?
"A. Fifty miles an hour."
According to Rosen, an expert can testify as to the speed of an automobile predicated upon a consideration of the point of impact, the damage to the vehicle, and the damage to any other vehicle involved in the collision, and skid marks before impact. The officer's testimony reflected that he had examined the accident scene, including skid marks, position of the vehicles, and damage. Our review of the record indicates that the trial court reasonably viewed this testimony as the basis for the officer's opinion. Because the only skid marks ever referred to were those made before the vehicles collided, one must infer that the police officer was testifying concerning the skid marks made prior to impact. The police officer testified that "[t]his car was traveling in this lane, it came in . . ., it hit its brakes and went into a skid and hit the truck, . . . spinning the truck around and the car went on down here and stopped."
The police officer's testimony concerning speed was predicated on a consideration of the factors set out inRosen. Therefore, the trial court did not err when it allowed the police officer to testify concerning the speed of the plaintiffs' vehicle.
 JUDICIAL NOTICE
The second argument raised is that the trial court abused its discretion when it refused to take judicial notice of the fact that there are 5,280 feet in a mile. The ground the plaintiffs use to support this argument is that this Court in Callahan v.Booth, 275 Ala. 275, 154 So.2d 32 (1963), held that "it is common knowledge that there are 5,280 feet in a mile, 60 minutes in a hour, and 60 seconds in a minute." The plaintiffs argue that they were prejudiced by the trial court's refusal to take judicial notice of the number of feet in a mile because, by that refusal, they say, they were prevented from rebutting the testimony *Page 852 
of the police officer, who was the only person who presented evidence to support the defendant's defense of contributory negligence.
A court can take judicial knowledge of certain facts within the common knowledge. Whether to take judicial notice of a fact is in the discretion of the trial court. O'Barr v. Feist,292 Ala. 440, 296 So.2d 152 (1974). In O'Barr, this Court stated that "[i]t is generally held that taking judicial notice of facts of common knowledge is in the discretion of the trial court." The plaintiff is correct in stating that the trial court could have taken judicial notice of the fact that there are 5,280 feet in a mile. However, the trial court was notrequired to take judicial notice of this fact. O'Barr, supra.
In response to the request made by the plaintiffs for the court to take judicial notice of the number of feet in a mile, the trial court stated that "It won't do any good for me to take judicial notice of it. I know there are. The jury doesn't at this point." The trial court further stated that "that [evidence] wouldn't rebut anything. You're limited now to rebuttal and there's nothing there to rebut. You can't rebut something that isn't there. . . . You would be offering direct testimony if you did that and it's my understand[ing] that something in rebuttal, you're limited to rebutting something that has been offered into evidence." The trial court's refusal to take judicial notice under the circumstances of this case was not an abuse of discretion.
In summary, the taking of judicial notice and the "acceptance or rejection of the evidence during rebuttal" are both functions within the trial court's sound discretion,O'Barr, supra, and White v. Boggs, 455 So.2d 820 (Ala. 1984). That discretion was not abused in this case. The judgment below is due to be affirmed.
AFFIRMED.
MADDOX, SHORES, HOUSTON and STEAGALL, JJ., concur.