On Application for Rehearing
The application for rehearing filed by Stanley Yarbrough and the Cullman County Commission, joined in by the Association of County Commissions of Alabama and the Alabama League of Municipalities, as amici curiae, is granted and the opinion of November 10, 2005, is withdrawn, with the following opinion substituted therefor.
J.M. "Mike" Hillman appeals from an order entered by the Cullman Circuit Court granting a motion to dismiss filed by Stanley Yarbrough and the Cullman County Commission ("the Commission"), the defendants in the action below (hereinafter jointly referred to as "the Yarbrough defendants"). We reverse and remand.
 Facts and Procedural History
The underlying operative facts, derived, for the reason hereinafter explained, solely from Hillman's complaint, are as follows: On November 25, 2003, two members of the Commission, Yarbrough and Wiley Kitchens, attended a meeting of the Cullman County Parks and Recreation Board ("the Board"). At one point, Yarbrough asked the Board to consider removing Hillman from his position as consulting engineer on a project being undertaken by the Board to renovate the Clarkston covered bridge. Yarbrough stated:
 "We are having trouble with [Hillman]. . . . We understand he has already spent half the money [earmarked for the renovation]. There has been tremendous trouble working with him. We need more input from him, and we need signs of work being done."
Yarbrough additionally requested the Board to "make [Hillman] more aggressive or dismiss him. We are getting complaints from the state because he is not filing his paperwork." It is unclear from *Page 1059 
the record why Yarbrough and Wiley attended the meeting of the Board and in what capacity. The comments Yarbrough made at the meeting were quoted in an article appearing in theCullman Times, a local newspaper.
Hillman sued Yarbrough, the Commission, the CullmanTimes, and Community Newspaper Holdings, Inc. (the latter two defendants are hereinafter referred to as "the newspaper defendants"). Hillman alleged, among other things, that he had been defamed by Yarbrough, acting both individually and, Hillman alleged, as an agent of the Commission.
The Yarbrough defendants subsequently filed a motion to dismiss Hillman's complaint as to them, attaching as an exhibit a copy of the relevant newspaper article. The Yarbrough defendants contended that the statements made by Yarbrough and quoted in the article were "subject to an absolute legislative privilege" and that the complaint thus failed to state a claim upon which relief could be granted and was due to be dismissed pursuant to Rule 12(b)(6), Ala. R. Civ. P. Hillman later amended his complaint;[1] to this amended version he attached a copy of the newspaper article as an exhibit, expressing no disagreement with the factual content of the article. The Yarbrough defendants subsequently renewed their motion to dismiss the complaint on the same basis they had alleged in their initial motion.
The trial court heard oral arguments on the motion to dismiss, and on September 21, 2004, granted the motion, stating that "this Court is of the opinion that the [Yarbrough defendants] are due to be dismissed as the communications by [Yarbrough] were made in the performance of his duties as county commissioner and are subject to immunity due to legislative privilege."
Hillman subsequently filed with the trial court a document he styled as a "motion to vacate judgment." In that motion, Hillman three times referred to the trial court's September 21 order as a "judgment." Shortly after Hillman filed his motion, the trial court, on November 15, 2004, made the following entry on the case-action summary sheet:
 "ORDERED, this matter comes before the Court on [Hillman's] Motion to Vacate Judgment. After hearing oral arguments, this Court does hereby deny same. The Summary Judgment previously entered remains in full force and effect in favor of [d]efendant[s]. If [Hillman] desires, they [sic] may request the court certify same as a final and appealable judgment under the Alabama Rules of Civil Procedure by written motion."
(Emphasis added.)
Nearly five months later, the Yarbrough defendants filed a "motion for final judgment under Rule 54(b)," Ala. R. Civ. P., contending that because six months had passed since the entry of the order dismissing them as defendants, "there would seem to be an adequate basis to establish the finality of an order favoring dismissal of these defendants." Therefore, the Yarbrough defendants requested that the court certify its September 21 order as a final judgment under Rule 54(b), Ala. R. Civ. P.
The trial court granted this motion on April 4, 2005, making "an express determination that there is no just reason for delay and expressly directing] the entry of a final judgment as to [the Yarbrough *Page 1060 
defendants]." Hillman then filed a motion to set aside the trial court's judgment, which the court denied. Hillman appeals.
On appeal, Hillman raises three grounds he contends warrant reversal of the trial court's order dismissing the Yarbrough defendants. First, he argues that the court's certification of its order as a final judgment was improper because, he says, a just reason for delay does in fact exist. Next, he asserts that the Yarbrough defendants were not entitled to assert a legislative privilege as to Yarbrough's comments to the Board. Finally, he attacks the trial court's treatment of the Yarbrough defendants' motion to dismiss as one for a summary judgment. Before we can know what standard of review is appropriate, we must determine the threshold issue: whether the trial court ordered the dismissal of the Yarbrough defendants or entered a summary judgment in their favor.
Hillman argues that the trial court improperly treated the Yarbrough defendants' motion to dismiss as a motion for a summary judgment. Indeed, the trial court's November 15 entry on the caseaction summary sheet, referring to its September 21 order, states that the "Summary Judgment previouslyentered remain[ed] in full force and effect." (Emphasis added.) However, the motions and responsive papers viewed as a whole do not support the notion that the court's September 21 order was intended to be a summary judgment. This Court will not elevate form over substance in determining the nature of a motion. Swain v. Terry,454 So.2d 948 (Ala. 1984); and Low v. State ex rel.Waltman, 602 So.2d 435 (Ala.Civ.App. 1992). The September 21 order simply granted the Yarbrough defendants' motion to dismiss; it did not purport to enter a summary judgment. Although the November 15 order referenced a previously entered "summary judgment," the court's next opportunity to refer to the September 21 action was an order directing the entry of a final judgment, and here the court referred to its September 21 order as "[t]his Court's earlier Order." (Emphasis added.) It appears that the court's reference to a "summary judgment" in the November 15 entry on the case-action summary sheet was simply inadvertent — perhaps caused by Hillman's reference to a "judgment" in his motion to vacate — which that court duly corrected in its subsequent rulings.
Although we conclude that the trial court did not enter a summary judgment on September 21, or even on November 15, that court eventually entered a final judgment on April 4, 2005. The court's order on that date stated that it was making final its earlier "order dismissing the [Yarbrough] defendants." It further made the required express determination that there was no just reason for delay and expressly directed the entry of a judgment.
Therefore, we recognize the court's September 21 order as one granting the Yarbrough defendants' motion to dismiss.[2]
The later incidental mischaracterization of this order of dismissal as a summary judgment *Page 1061 
did not retroactively alter the nature of the initial order.
 Standard of Review
An order granting a motion to dismiss is not entitled to a presumption of correctness.Jones v. Lee County Comm'n, 394 So.2d 928, 930
(Ala. 1981). In reviewing such an order, we must take the allegations of the complaint "most strongly in favor of the pleader" and determine whether the plaintiff could prove any set of facts that would entitle him or her to relief. Feorev. Feore, 627 So.2d 411, 413 (Ala.Civ.App. 1993); andRaley v. Citibanc of Alabama/Andalusia,474 So.2d 640, 641 (Ala. 1985). We are not concerned with whether the plaintiff will ultimately prevail on the merits, only whether the plaintiff may possibly prevail. Fontenot v.Bramlett, 470 So.2d 669, 671 (Ala. 1985).
 Analysis
A. Was There "No Just Reason for Delay"?
Hillman argues that although the trial court properly phrased its order certifying the September 21, 2004, order as a final judgment under Rule 54(b), Ala. R. Civ. P., the court erred in determining that there was, in fact, no just reason for delay in so certifying the order. We disagree.
Hillman argues that there were two just reasons for delay. First, he contends, the claims against the newspaper defendants were "so closely related to and intertwined with claims against [the Yarbrough defendants] that information developed through discovery could reveal facts that indicate [the Yarbrough defendants'] liability." (Hillman's brief, at 16.) Second, Hillman asserts that "there was no proof [that] Yarbrough was performing a legislative duty or a legislative function" at the time he made the statements quoted in the Cullman Times.Id.
As for Hillman's first argument, this Court has not hesitated to dismiss an appeal or to set aside a Rule 54(b) certification when it appeared that the trial court had erred in certifying a judgment as final because a just reason for delay in fact existed. See, e.g., Clarke-Mobile CountiesGas Dist. v. Prior Energy Corp., 834 So.2d 88 (Ala. 2002), and Branch v. SouthTrust Bank of Dothan,514 So.2d 1373 (Ala. 1987); see also Winecoff v. Compass Bank,854 So.2d 611 (Ala.Civ.App. 2003), and H.P.H. Props., Inc.v. Cahaba Lumber Millwork, Inc., 811 So.2d 554
(Ala.Civ.App. 2001). Hillman correctly notes that we have set aside a certification of finality in prior cases specifically because a dismissed claim and a remaining claim were "so closely intertwined" that there existed an unreasonable risk of inconsistent results should the disposition of the one become final before the other was resolved. Here the inconsistent result Hillman envisions would be dismissing the Yarbrough defendants, despite Yarbrough's allegedly defamatory comments, while holding the newspaper defendants liable for subsequently printing those comments.
The specific basis of the trial court's holding dismissing the Yarbrough defendants was that they were entitled to the protection of absolute legislative privilege for Yarbrough's comments. If that decision was correct, then whether Yarbrough's comments were defamatory is irrelevant to the Yarbrough defendants' liability. It would thus be permissibly conceivable, and not legally inconsistent, to find the newspaper defendants liable for printing the allegedly defamatory comments without finding the Yarbrough defendants liable.
Hillman's second argument concerning the prematurity of the trial court's certification of finality is that there exists no proof that when he made the comments *Page 1062 
Yarbrough was performing a legislative duty or a legislative function so as to invoke absolute legislative privilege. Although there may presently be absent from the complaint factual averments that would support the Yarbrough defendants' privilege argument, that is a matter to be determined in Part B., infra. Even if that were the case, moreover, this Court would be obliged to reverse the judgment of the trial court, not because it certified the judgment as final, but because it erred in determining that Yarbrough's comments were privileged.
We therefore conclude that the trial court did not err in certifying the judgment of dismissal as final.
B. Do the Allegations of the Complaint Establish AbsoluteLegislative Privilege for the Yarbrough Defendants?
Hillman's final argument on appeal is that Yarbrough's comments were not shown to be absolutely privileged. For the reasons set forth below, we agree.
The Alabama Constitution of 1901, § 56, affords absolutelegislative immunity to members of the legislature, providing that "for any speech or debate in either house [the legislators] shall not be questioned in any other place." At least as early as 1967, this Court recognized the availability of an absolute privilege for communications "made in the course of legislative or judicial proceedings, and acts of state made under authority of law." Tonsmeire v. Tonsmeire,281 Ala. 102, 106, 199 So.2d 645, 648 (1967). In 2003, in Butlerv. Town of Argo, 871 So.2d 1 (Ala. 2003), this Court noted that "[t]his privilege has been extended to members of local legislative bodies," quoting Restatement (Second) ofTorts § 590 (1977), which provides that "`[a] member of the Congress of the United States or of a State or locallegislative body is absolutely privileged to publish defamatory matter concerning another in the performance of his legislative functions.'" 871 So.2d at 24 (emphasis added).
"`"To make the defense of absolute privilege available, the communication must be made on a privileged occasion; the circumstances under which the defamatory language is used are the occasion, and it is the occasion that is privileged."'" Butler, 871 So.2d at 23 (quotingO'Barr v. Feist, 292 Ala. 440, 445, 296 So.2d 152, 156
(1974), quoting in turn 50 Am.Jur.2d Libel andSlander § 193, p. 696). "Thus, members of local legislative bodies . . . are absolutely privileged to publish matters concerning others if the publication is made during the performance of the members' legislative duties. . . . The privilege, however, does not extend to public discussion outside of a legislative function. . . ." 871 So.2d at 24.
The fact that an action is undertaken in the course of a legislator's fulfilling his or her responsibilities does not necessarily indicate that the action was taken in the performance of a legislative duty or act. In United Statesv. Brewster, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507
(1972), the Supreme Court was confronted with a question concerning the "Speech or Debate" Clause, U.S. Const., art. I, § 6, which provides, in pertinent part: "[F]or any speech or debate in either house, [senators and representatives] shall not be questioned in any other place." The Court, interpreting the federal constitutional provision, observed the state of the law to be that a member of Congress was immune from suit if the basis of the prosecution was a legislative act or the motivation for a legislative act. In thus defining what constituted a legislative act, the Court stated:
 "A legislative act has consistently been defined as an act generally done in Congress in relation to the business before *Page 1063 
it. In sum, the Speech or Debate Clause [U.S. Const., art. I, § 6] prohibits inquiry only into those things generally said or done in the House or the Senate in the performance of official duties and into the motivation for those acts.
 "It is well known, of course, that Members of the Congress engage in many activities other than the purely legislative activities protected by the Speech or Debate Clause. These include a wide range of legitimate `errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing socalled `news letters' to constituents, news releases, and speeches delivered outside the Congress. The range of these related activities has grown over the years. . . . Although these are entirely legitimate activities, they are political in nature rather than legislative, in the sense that term has been used by the Court in prior cases. But it has never been seriously contended that these political matters, however appropriate, have the protection afforded by the Speech or Debate Clause. Careful examination of the decided cases reveals that the Court has regarded the protection as reaching only those things `generally done in a session of the House by one of its members in relation to the business before it,' Kilbourn v. Thompson,
[103 U.S. 168, 204 (1881) ], or things `said or done by him, as a representative, in the exercise of the functions of that office.' Coffin v. Coffin, 4 Mass. 1, 27 (1808)."
408 U.S. at 512-13, 92 S.Ct. 2531. The Supreme Court has also offered these observations, however, in Bogan v.Scott-Harris, 523 U.S. 44, 52, 118 S.Ct. 966, 140 L.Ed.2d 79
(1998):
 "The rationales for according absolute immunity to federal, state, and regional legislators apply with equal force to local legislators. Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability. See Spallone v. United States, 493 U.S. 265, 279 (1990) (noting, in the context of addressing local legislative action, that `any restriction on a legislator's freedom undermines the "public good" by interfering with the rights of the people to representation in the democratic process'); see also Kilbourn v. Thompson, 103 U.S. [168], at 201-204 [ (1881) ] (federal legislators); Tenneyl v. Brandhove, 341 U.S. 367], at 377 [(1951) ] (state legislators); Lake Country Estates, 440 U.S. [391], at 405 [(1979) ] (regional legislators). Furthermore, the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace. See Tenney,
supra, at 377 (citing `the cost and inconvenience and distractions of a trial'). And the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability. See Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982)."
 In Butler, 871 So.2d at 23, we explained:
 "`As one court has stated, "the availability of an absolute privilege must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives."' Webster v. Byrd, 494 So.2d 31, 35 (Ala. 1986) (quoting Supry v. Bolduc, 112 N.H. 274, 276, 293 A.2d 767, 769 (1972)). *Page 1064 
 "`"An absolutely privileged communication is one in respect of which, by reason of the occasion on which, or the matter in reference to which, it is made, no remedy can be had in a civil action, however hard it may bear upon a person who claims to be injured thereby, and even though it may have been made maliciously, and is false. To make the defense of absolute privilege available, the communication must be made on a privileged occasion; the circumstances under which the defamatory language is used are the occasion, and it is the occasion that is privileged. The privilege is a matter of public policy, and is not intended so much for the protection of those engaged in the public service and in the enactment and administration of law, as for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for the recovery of damages."'
 "O'Barr v. Feist, 292 Ala. 440, 445, 296 So.2d 152, 156 (1974) (quoting 50 Am. Jur.2d Libel and Slander § 193, p. 696)."
 We also stated in Butler:
 "`A member of the Congress of the United States or of a State or local legislative body is absolutely privileged to publish defamatory matter concerning another in the performance of his legislative functions.' Restatement (Second) of Torts, § 590 (1977). Thus, members of local legislative bodies, i.e., city council members, are absolutely privileged to publish matters concerning others if the publication is made during the performance of the members' legis lative duties. See id. Unlike the privilege afforded to those involved in judicial proceedings, the legislative privilege applies even when the defamatory communication is not related to matters of public or legislative concern. See Restatement (Second) of Torts, § 590 cmt. a. (1977). The privilege, however, does not extend to public discussion outside of a legislative function, such as explaining reasons for voting on legislation or engaging in activities only incidentally related to legislative affairs. See Restatement (Second) of Torts, § 590 cmt. a. Furthermore, although this absolute privilege is rooted in defamation law, the privilege also applies to the publication of any matter that amounts to an invasion of privacy. See Restatement (Second) of Torts, § 652F (1977)." 871 So.2d at 24.
Hillman asserts that he can present evidence indicating that in addressing the Board Yarbrough was not performing "legislative duties." In making this argument, Hillman partially relies upon an affidavit submitted in conjunction with his motion to vacate the judgment, filed after the court entered its ruling on the Yarbrough defendants' motion to dismiss. The record does not indicate whether the trial court considered this evidence, because it denied Hillman's motion to vacate without explanation. The court was free to disregard the evidence presented in the affidavit. In a case in which a party files a motion to alter, amend, or vacate a summary judgment, we have consistently held that "`"'[t]he trial court can consider only that material before it at the time of submission of the motion' [such as to dismiss or for a summary judgment] and . . . any material filed thereafter `comes too late.'" `" Ex parte Organized Cmty. Action Program,Inc., 852 So.2d 92, 95 (Ala. 2002) (quoting Bean v.State Farm Fire Cas. Co., 591 So.2d 17, 20
(Ala. 1991), quoting in turn other cases). We see no distinction between *Page 1065 
a motion that comes on the heels of a ruling on a motion to dismiss as opposed to a ruling on a motion for a summary judgment. Therefore we need not consider the evidence presented in the affidavit attached to Hillman's motion to vacate.
Our standard of review obliges us to reverse an order dismissing a defendant if the plaintiff could possibly prove any set of facts that would allow recovery. Fontenot,
supra; Feore, supra. It appears that Hillman could conceivably prove a set of facts under which Yarbrough's presence at the meeting of the Board was not a legislative function but rather a "public discussion outside of a legislative function." Butler, 871 So.2d at 24. Because we conclude that Hillman could prove such a set of facts, we reverse the trial court's order granting the Yarbrough defendants' motion to dismiss, and we remand the cause for proceedings consistent with this opinion.
APPLICATION GRANTED; OPINION OF NOVEMBER 10, 2005, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
NABERS, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
[1] Hillman's amendment did not materially alter the relevant allegations of his original complaint.
[2] After the Yarbrough defendants presented in their brief to this Court an argument similar to this analysis and concluded that the trial court had not actually treated the motion to dismiss as one for a summary judgment, Hillman stated in his reply brief: "In view of the [Yarbrough defendants'] concession that the Trail [sic] Court Order was made on a Motion to Dismiss and is not a Summary Judgment Order[, Hillman] refrains from further addressing this issue." We do not, however, read this as saying that Hillman has abandoned this argument, as advanced in his primary brief, and we thus address the merits of this argument.