Rick Rothenberger appeals from a summary judgment entered in favor of Cast Products, Inc., on Rothenberger's claim of retaliatory discharge. This case is before this court pursuant to Ala. Code 1975, § 12-2-7(6).
Our review of the record reveals the following: On November 30, 1993, Rothenberger suffered an on-the-job injury while he was working in the line and scope of his employment with Cast Products, Inc. (employer). It is undisputed that Rothenberger immediately filed a "First Report of Injury" with the employer, in accordance with the Alabama Workers' Compensation Act. Thus, at the outset, we find that Rothenberger filed a workers' compensation claim. See Smith v. Dunlop Tire Corp.,663 So.2d 914 (Ala. 1995).[1] On January 14, 1994, approximately two months later, the employer terminated Rothenberger's employment.
On May 24, 1995, Rothenberger filed a two-count complaint against the employer. In the first count, Rothenberger requested workers' compensation benefits. In the second count, Rothenberger alleged that he had been discharged from his employment in retaliation for filing a claim for workers' compensation benefits.
On June 26, 1995, the trial court severed the workers' compensation claim from the retaliatory discharge claim. We would note that Rothenberger and the employer ultimately entered into a workers' compensation settlement agreement, which expressly preserved Rothenberger's pending claim for retaliatory discharge. The trial court approved the settlement agreement.
On June 13, 1996, the employer filed a motion for a summary judgment; a narrative summary of the facts; the affidavit of its vice president, Mike Medlin; the deposition testimony of Medlin; and the deposition testimony of Rothenberger. Rothenberger responded with a brief in opposition, his deposition testimony, and the deposition testimony of Medlin.
On March 5, 1997, the trial court entered an order, granting the employer's summary judgment motion. Rothenberger filed a post-judgment motion, which the trial court denied.
Rothenberger appeals.
We note that in appropriate circumstances, the general rule under Alabama law is that an employee may be discharged from his employment, with or without cause or justification, *Page 1222 
for a good reason, a wrong reason, or no reason at all.Culbreth v. Woodham Plumbing Co., 599 So.2d 1120 (Ala. 1992). Section 25-5-11.1, Ala. Code 1975, provides an exception to this general rule, which states that "[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits. . . ." See McClain v.Birmingham Coca-Cola Bottling Co., 578 So.2d 1299 (Ala. 1991).
In Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364,1369 (Ala. 1988), our supreme court stated the following in regard to a retaliatory discharge action filed pursuant to §25-5-11.1:
 "We hold that an employee may establish a prima facie case of retaliatory discharge by providing that he was 'terminated' because he sought to recover worker's compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the plaintiff must prove that the reason was not true but a pretext for an otherwise impermissible termination."
Furthermore, in the context of a summary judgment motion filed by the employer in regard to a retaliatory discharge claim, our supreme court, in Culbreth, 599 So.2d at 1122
(Ala. 1992), stated the following:
 "[I]f the [employer] has supported a summary judgment motion with evidence of a legitimate reason for terminating the [employee], the [employee] must then refute that showing with his own prima facie case; of course, the [employee] has no burden to produce evidence before trial until the [employer] has made and properly supported a motion for [a] summary judgment. If the [employer's] showing of a legitimate reason is conclusive enough to establish that 'there is no genuine question as to [that] material fact and that the moving party is entitled to a judgment as a matter of law,' Rule 56(c), Ala. R. Civ. P., the [employee] would also have to produce evidence to refute that showing."
In the instant case the employer had the initial burden of showing that Rothenberger's employment was terminated for a legitimate reason. In support of its motion for a summary judgment, the employer offered the testimony of its vice president, Mike Medlin. Medlin's testimony established a prima facie showing that Rothenberger's employment was terminated because of his inferior work.
Medlin stated that shortly after Rothenberger was hired, he began to exhibit an inability to perform the duties associated with his job. Specifically, Medlin claimed that Rothenberger was not organized; he was unable to identify castings; he did not follow the daily production sheets, which indicated which castings were to be produced, the quantity to be produced, and the date on which they were to be shipped; and he had sent defective and/or unfinished castings to the shipping and receiving department. Medlin stated that he had on-going meetings with the plant manager regarding Rothenberger's job performance and that he had worked closely with Rothenberger for three weeks to help Rothenberger.
Rothenberger, on the other hand, contends that the reasons proffered by the employer for terminating his employment were not true, but were merely a pretext for an otherwise impermissible termination. Rothenberger testified that in July 1993, he began working with the employer in a temporary capacity as production supervisor. On August 23, 1993, the employer hired Rothenberger on a permanent basis to supervise the production of building two. According to Rothenberger, the employer gave him an oral evaluation, which resulted in a raise. Rothenberger testified that when he was hired to supervise building two, there was a problem with misplaced parts, and that the department was 22,000 parts behind in production. Rothenberger stated that he solved both problems and, by the end of December 1993, the department was behind by only one part.
A termination report contained in the record, dated January 14, 1994, and written by the plant manager, indicates that "Rothenberger was on a 6-month probation for the *Page 1223 
position of supervisor of building # 2. In my judgment, [Rothenberger] will not be able to supervise building # 2 within this 6 months." We would note, however, that the employer hired Rothenberger on August 23, 1993. A document contained in the record, dated August 20, 1993, and signed by Rothenberger, states the following: "I understand I am being hired as a full-time employee and acknowledge that I have been informed and fully understand that I am on a 90-day probational period." Thus, it would appear that Rothenberger's probation period had already expired when he suffered his injury.
Rothenberger testified that he never received any written warnings or reprimands from the employer regarding his job performance. In fact, it is undisputed that Rothenberger's personnel file contained no written reprimands; no written evaluations; and no documentation of the on-going meetings, which Medlin alleges that he had with the plant manager regarding Rothenberger's job performance. Rothenberger produced the following testimony in support of his position that he received no reprimands:
 "Q. Are there any disciplinary forms filled out in this personnel file?
"A. No.
"Q. Are there any employee evaluations in here?
"A. No.
". . . .
 "Q. No documents indicating a written reprimand or a directive?
"A. Not that I'm aware of.
 "Q. And there are no documents of these meetings that occurred between you and [the plant manager]? No documentation that there was a meeting?
"A. No.
"Q. No calendar [when] these meetings occurred?
"A. No.
". . . .
 "Q. Did you fill out any documents as a result of these meetings, like a termination decision?
 "A. No, I wouldn't do that. That would be [the plant manager's] responsibility.
 "Q. Okay. So [the plant manager] would have filled out some document, like a termination [decision].
"A. Yes.
 "Q. Should a supervisor be given a written reprimand or evaluation or instructions, written, providing him an opportunity to correct those deficiencies before termination?
"A. Yes."
Furthermore, Rothenberger testified that after the employer terminated Rothenberger's position, he specifically requested a job in foundry or production, but that the employer's plant manager told him "no." The employer, however, contends that it did offer Rothenberger another position.
Rothenberger also testified that the employer had on other occasions released temporary employees who had suffered on-the-job injuries. According to Rothenberger, the employer sent these employees back to temporary services. Rothenberger was unable to recall the names of those persons. However, he was able to identify one person by his first name,i.e., Tim, and another person by the color of his hair, i.e., red.
In the instant case we find that Rothenberger presented substantial evidence to refute the employer's proffered legitimate reason for terminating his position. Clearly, the conflicting evidence in this case creates a genuine issue of material fact as to whether the reasons offered by the employer for terminating Rothenberger's employment were merely a pretext for an otherwise impermissible termination. Twilley, supra.
Additionally, we would note that the employer, in its brief, argues that Rothenberger failed to state a prima facie case for retaliatory discharge. Specifically, the employer contends that Rothenberger's injury did not prevent him from missing any time from work, an element which it deems a prerequisite for a prima facie showing of retaliatory discharge. We disagree. *Page 1224 
In the instant case Rothenberger sustained an on-the-job injury on November 30, 1993. On that same day he sought medical treatment for his injuries under the Workers' Compensation Act, he returned to work, he filed a first report of injury, and he took the rest of the day off. He returned to work the following day. Approximately two months later, the employer terminated his position.
Based on the above-stated scenario, we find that Rothenberger presented a prima facie case of retaliatory discharge regardless of whether his injuries prevented him from missing time from work. This is true, especially since we find that Rothenberger presented substantial evidence to support his contentions on appeal. To conclude otherwise would be contrary to the beneficent goals of the Workers' Compensation Act.See Motion Industries, Inc. v. Pate, 678 So.2d 724, 726
(Ala. 1996).
In Culbreth, 599 So.2d at 1122, our supreme court stated that an employee had established a prima facie case of retaliatory discharge, filed pursuant to § 25-5-11.1, by showing the following:
 "[The employee] filed a worker's compensation claim for a work-related injury; the injury prevented him from working [for a period of time]; he subsequently returned to work; and upon his return he was informed that he no longer had a job."
The employer correctly points out that this court in some instances has interpreted § 25-5-11.1 to suggest that an employee must miss time from work as a result of his or her injury. See, e.g., Haygood v. Wesfam Restaurants, Inc.,675 So.2d 1312 (Ala.Civ.App. 1996). In other instances this court has interpreted § 25.5.11.1, to suggest that an employee may,can, or could establish a prima facie case by showing that the employee had missed time from work. See, e.g., Allen v.Albrecht Enterprises, Inc., 675 So.2d 425 (Ala.Civ.App. 1995).
After carefully reviewing the history of these cases, however, we find the latter interpretation to be more appropriate. It is very logical to assume that an employee could sustain an on-the-job injury that required medical treatment, but did not prevent the employee from actually or physically performing his job. Thus, any language to the contrary found in cases such as Haygood, supra, is overruled.
In light of the foregoing, the judgment of the trial court is due to be reversed and the case remanded for proceedings consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge Richard L. Holmes while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY, J., concurs specially.
THOMPSON, J., dissents.
[1] In Dunlop Tire Corp., the employee, in his complaint for retaliatory discharge, alleged that he had filed a "First Report of Injury" with his employer, in accordance with the Alabama's Workers' Compensation Act. The employer admitted the allegation in its answer to the complaint. Our supreme court held that for purposes of appeal, the employee had filed a workers' compensation claim.