CRAWLEY, Judge.
Rachel Holcomb (“the worker”) appeals from the trial court’s summary judgment for General Aviation Terminal, Inc. (“the company”). We affirm.
The worker was employed as a receptionist for the company and also performed several odd jobs such as delivery and cleaning. She suffered an on-the-job injury on August 9, 1999, for which she received workers’ compensation benefits. On April 25, 2000, after having surgery to repair a torn rotator cuff and having gone through rehabilitation, she was released from her doctor’s care to return to work with restrictions on the type of work she could perform. While the worker was away from work for treatment of her injury, the company hired a temporary employee to replace her. Upon the worker’s return on May 12, 2000, she was placed in a multipurpose room, which also served as an employee break room, at a desk where she could answer the telephones. On May 15, 2000, on her fourth day back to work, the worker resigned.
On May 24, 2000, the worker sued the company, alleging that it had constructively discharged her by making her job “humiliating and intolerable,” and that it had done so because she had filed a workers’ compensation claim. On June 30, 2000, the company filed an answer to the worker’s complaint. On September 14, 2001, the company filed a motion for a summary judgment, with a supporting brief and portions of the deposition testimony of the worker; Mark Doggett, her supervisor; and Lenda Sue Brown, the worker’s reha *360 bilitation nurse, attached as exhibits. On December 4, 2001, the worker filed an opposition to the company’s motion for a summary judgment, with a supporting brief and portions of the deposition testimony of Brown; Doggett; Melba Franklin, the worker’s previous human-resources manager; and Johnny Peterson, the worker’s previous supervisor, and a copy of her resignation letter attached to the brief as exhibits. On December 20, 2001, the company filed a reply to the worker’s opposition, with portions of the deposition testimony of the worker and Doggett attached as exhibits. On January 15, 2002, the trial court entered a summary judgment for the company.
On January 23, 2002, the worker filed a notice of appeal to the supreme court, and this case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975. On appeal, the worker argues that the trial court erred in entering a summary judgment for the company because, she says, in doing so it had impermissibly relied on her subjective opinion given in her deposition testimony that her work environment was not intolerable, rather than applying an objective-standard approach, pursuant to Haygood v. Wesfam Restaurants, Inc., 675 So.2d 1312 (Ala.Civ.App.1996), overruled on other grounds, Rothenberger v. Cast Products, Inc., 716 So.2d 1220 (Ala.Civ.App.1997).
Our review of a summary judgment is de novo.
“In reviewing the disposition of a motion for summary judgment, ‘we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,’ Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988), and whether the movant was ‘entitled to a judgment as a matter of law.’ Wright v. Wright, 654 So.2d 542 (Ala.1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).”
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997).
The worker testified in her deposition, relevant portions of which were attached as an exhibit in support of the company’s motion for a summary judgment, in pertinent part, as follows:
“Q. Now at some point in time Dr. Crotwell determined that you could return to your job at [the company] with certain restrictions, light duty restrictions?
“A. Correct.
“Q. And we’ve talked about those restrictions a little bit. In fact, page 67 of your former deposition, basically what the doctor said you could do is answer the telephone?
“A. Yes.
“Q. And one of the specific restrictions was no lifting anything over five pounds?
*361 “A. Correct.
[[Image here]]
“Q. And you mentioned in your previous deposition also no typing?
“A. Correct.
“Q. Did you disagree at all with Dr. Crotwell that at the time that he did return you to work where you could answer the telephone, did you disagree or do you have any complaints that you couldn’t even do that? Do you feel like you were able to do that?
“A. I did not disagree with him. I told him what I did at work. He says but you’re not going to be doing that; you’re-going to do light duty, answering the phone. And he said you are not to pick up anything over five pounds.
“Q. And what I’m asking is, did you feel at that time that you could go back to work and answer the telephone?
“A. Yes, I did....
[[Image here]]
“Q. Now, when you returned to work you were being paid the same wage—
“A. Correct.
“Q. —as you had before your injury?
“A. Correct.
“Q. Tell me about any of your discussions with Mark Doggett or anyone else at [the company] about your return to work?
“A. I just returned to work. They put me — carried me back. He said, “We’re going to [sit] you back here.’ It was an area that we used for the kitchen....
[[Image here]]
“Q. Who was sitting at the reception desk that you had normally—
“A. It was the new girl.
“Q. Other than what you call the kitchen, were you aware of any other office or area in the budding where you could have worked?
“A. There was not another place.
[[Image here]]
“Q. Well, what about either with Mr. Doggett or any of the other management; did you tell them that I’m sitting back here, but the phone’s not ringing? “A. I mentioned that to him.
“Q. When did you mention that to him? “A. Probably about the third day.
“Q. And what did you tell him?
“A. I just told him that the phone was not ringing.
“Q. And what did he say?
“A. Well, that’s all we have for you right now.
[[Image here]]
“Q. And then the next day you come back to work you go to the same desk, same phone, and it doesn’t ring?
“A. No, sir.
“Q. How long did you stay that day?
“A. Their accountant came in and asked me to move; that he was going to be sitting there doing some work. And he said, ‘Oh, Ms. Rachel, are you visiting us today?’ I said, ‘No, sir, I’m back at work.’ And he said, ‘Doing what?’ I said answering this phone. He said, “Well, I’ve got to get over here and work.’ I said okay. So I moved.
[[Image here]]
“Q. What is it that you wanted; is it that you wanted to sit at your old reception desk and answer the phone there?
“A. That was what I was hired for was a receptionist and I was assuming— which I assumed wrong — that I would be assuming that same position when I returned.
“Q. Well, I understand that, but we’ve already, I think, talked about your restrictions when you returned. I mean, you were only able to answer the phone?
“A. That’s correct.
*362 [[Image here]]
“Q. Now, Bobbie McDuffy, Ms. Raines, Mr. Bagett,[1] did any of them say anything offensive to you during the 3/& day period after you returned to work?
“A. They were not there that much, just for a few seconds, and they were gone and just came in and said good morning, and that was it. But Bobbie was there all the time, but she was busy. She didn’t have time to talk.
“Q. So I take it then the answer to my question is that they didn’t say anything to you that you considered offensive during that 2?h day period?
“A. No, no.
“Q. Ms. Holcomb, do you feel like your situation at [the company] when you returned to work was intolerable?
“A. I can’t say that it was intolerable, and I won’t say it was intolerable. I will say that the atmosphere was different.
“Q. Do you feel like you had no other choice but to quit working?
“A. I felt like that I was not wanted; that that was the reason that they put me back there in that corner.
“Q. But do you feel like you could have continued to work for at least a little longer than 3]é days?
“A. Yes, I do. I feel like I could still be working right now.”
The worker argues that the trial court erred by considering her subjective opinion that her work environment was not intolerable in entering a summary judgment for the company. However, the trial court set out no findings in its order from which we can determine that that was the reasoning it used to support its order. In any event, the worker contends that to rely on her subjective opinion is contrary to Haygood, supra.
In Haygood, this court stated:
“In Irons v. Service Merchandise Co., 611 So.2d 294, 295 (Ala.1992), our supreme court defined ‘constructive discharge’ as follows:
“ ‘ “[I]f the employer deliberately makes an employee’s working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has [brought about] a constructive discharge and is as hable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.” ’
“(Quoting Jurgens v. E.E.O.C., 903 F.2d 386, 390 (5th Cir.1990)). That definition follows the objective standard utilized by the federal courts. See, e.g., Boze v. Branstetter, 912 F.2d 801 (5th Cir.1990); Jett v. Dallas Indep. Sch. Dist., 798 F.2d 748 (5th Cir.1986), aff'd in part and remanded in part on other grounds, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Thus, the employee’s subjective perceptions do not establish a constructive discharge. Bristow v. Daily Press, Inc., 770 F.2d 1251 (4th Cir.1985), cert. denied, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986). In Irons, our supreme court affirmed a summary judgment for the employer, even though the claimant’s affidavit in opposition to the summary judgment motion stated that her employer had criticized her work performance because of her claim for workers’ compensation benefits. Her statements were held to be conclusory and based upon speculation that, as a matter of law, did not establish a constructive discharge.
“Moreover, the federal courts have held that unreasonable sensitivity to the *363 working environment, Brooms v. Regal Tube Co., 881 F.2d 412 (7th Cir.1989), jumping to conclusions, Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536 (11th Cir.1987), and overreaction to business decisions, Pena v. Brattleboro Retreat, 702 F.2d 322 (2d Cir.1983), will not support a claim of constructive discharge. Haygood’s belief that someone was threatening her, thus making her afraid, and her reaction to her co-employees’ comments that she was being fired, when she knew that they were joking, were unreasonable on her part and were insufficient to be considered a constructive discharge. Proof of mere difficult or unpleasant working conditions does not establish a constructive discharge. Stetson v. NYNEX Serv. Co., 995 F.2d 355 (2d Cir.1993).”
675 So.2d at 1314-15.
The general prohibition against relying on an employee’s subjective opinion guards against judgments based on an employee’s unreasonable sensitivity, an employee’s jumping to conclusions, or an employee’s overreaction to business decisions. Hay-good, supra. However, under these circumstances, when the employee’s subjective opinion is that her work environment was not intolerable, those possible reactions are not present and the employer is entitled to a summary judgment. The trial court’s judgment is due to be affirmed.
AFFIRMED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.

1. McDuffy, Raines, and Bagett were employees of the company.