MURDOCK, Judge.
Antonio Phillips appeals from a judgment as a matter of law entered by the Calhoun Circuit Court against him and in favor of his former employer, Sentinel Consumer Products, Inc. (“Sentinel”), on Phillips’s claim of retaliatory discharge. We affirm.
Phillips, who is 24 years old, was hired by Sentinel on May 26, 1999, to do cleanup *452 work at its plant. When he was hired by Sentinel, Phillips was given the company’s Employee Handbook (“the Handbook”); Phillips testified that he read and understood the Handbook. Among other things, the Handbook listed “Summary Discharge Offenses,” i.e., conduct that would “subject [the employee] to immediate discharge.” One of those offenses was “Job Abandonment.”
Initially, Phillips only performed cleanup work around the machines in the plant, but he subsequently received training on how to operate “carding machines.” On June 22, 1999, Phillips severely injured his left hand when it got caught in a carding machine that he was operating. The machine severed the tendons in most of his fingers and mangled the tips of some of his fingers. Phillips was taken immediately to the hospital; the next day an orthopedic surgeon performed surgery on Phillips’s left hand for seven or eight hours.
Phillips was excused from work for about a week after the surgery. When Phillips returned to work, he was unable to use his left hand; Sentinel’s human resources supervisor, Pamela Ray, assigned Phillips to a light-duty job in the “fluff’ department. The work involved sweeping cotton off the floor of the plant and placing stickers on boxes. Phillips’s supervisor in the fluff department was Carolyn White. Phillips testified that Ray told him that “if [he] had any questions [about the workers’ compensation process] to talk to her about it, but [that] [he] didn’t have any questions for her as [he could] recall.” Phillips also stated that when he received a doctor’s bill at his home address, Ray told him to bring the bill and others like it to her so that Sentinel could pay them.
On July 19, 1999, toward the end of his shift, Phillips’s wife came to the plant and informed someone that she needed to speak to him. Phillips testified that White went to him and stated that “[his] ride was up front, [and] to see what was going on.” Phillips continued: “So once I [got] back up to the front to see what was going on, I found out I had to leave. So I came back and notified [White] that I was leaving and she said ‘fine.’ ” Phillips testified that he could not remember why he had to leave. On cross-examination, some of this testimony was shown to conflict with Phillips’s earlier deposition testimony. There is no dispute, however, that Phillips left before the end of his shift on July 19, 1999, for some unspecified reason.
The next day, July 20, 1999, Phillips arrived at work on time and worked for most of his shift before being summoned into a conference room in the office of Ed Olsen, the plant manager. Present at the meeting were Olsen, Ray, and White. Phillips testified that Ray handed him a document and asked him to read it. The document stated that Phillips was being “[discharged due to job abandonment on [July 19, 1999]. [Phillips] left work without permission or even informing [his] supervisor prior to departing. Page 19 of the [Handbook] states that job abandonment will be [a] basis for immediate discharge.” Phillips testified that no one explained to him what “job abandonment” meant; however, he also admitted that he had read the Handbook and had understood it. He also testified that no one asked him for an explanation as to why he had left work early on the previous day. Phillips’s employment was terminated, and he has not worked at another job since his termination from employment at Sentinel.
On August 9, 1999, Phillips filed a complaint in the Calhoun Circuit Court seeking workers’ compensation benefits and alleging retaliatory discharge by Sentinel. On August 1, 2000, the parties filed a “Workers’ Compensation Lump Sum Settlement Agreement” (“the Agreement”) *453 with the trial court. In the Agreement, the parties acknowledged that Phillips had been injured on the job and that he had suffered a 26 percent permanent partial disability. Sentinel agreed that it had been paying Phillips’s medical bills pertaining to the injury and that it would continue to do so. The Agreement provided that Sentinel had previously paid Phillips “temporary total disability benefits, amounting to $1,226.75. The parties do hereby agree that said total is the correct sum due [Phillips] for temporary total disability benefits as a consequence of the accident....” Further, the Agreement provided that Phillips would receive $22,000 “as a compromise lump sum indemnity for a permanent partial disability....” Finally, the Agreement provided:
“It is expressly understood and agreed by and between the parties that this settlement agreement and the resulting release does not pertain to, or release [Sentinel] from, the tort actions of retaliatory discharge and/or wrongful termination presently pending before the Circuit Court of Calhoun County, Alabama, which said tort actions for retaliatory discharge and/or wrongful termination are expressly reserved to [Phillips].”
The trial court approved the Agreement in full.
Phillips’s retaliatory-discharge claim was tried before a jury on February 3, 2003. Phillips testified as summarized above concerning his accident and subsequent termination, as well as about his unsuccessful efforts to find other employment after his employment with Sentinel was terminated. Phillips called another witness, Rodriquez Jordan, a former Sentinel employee, who testified to resigning from working there because, after he filed a workers’ compensation claim and returned to work, he was allegedly subjected to repeated threats of termination if he did not increase his productivity. Following the testimony of Phillips and Jordan, Phillips rested his case and Sentinel moved for a judgment as a matter of law on the ground that Phillips had failed to establish that he had filed a workers’ compensation claim before he was terminated, thus failing to present a prima facie case of retaliatory discharge.
The trial court granted the motion and explained to the jury that Phillips had “failed to present evidence to prove that [he] took any steps whatsoever to make a [workers’] compensation claim.” On February 4, 2003, the trial court entered the judgment as a matter of law on the ease action summary sheet, stating:
“After argument, the Court finds that [Phillips] failed to present any evidence that [he] claimed workers’ compensation benefits, sought to recover workers’ compensation benefits, or took steps to make a workers’ compensation claim. For this reason, the motion for [a judgment as a matter of law] in favor of [Sentinel] and against [Phillips] is granted.”
Phillips filed a motion for a new trial, which was denied by operation of law in accordance with Rule 59.1, Ala. R. Civ. P. Phillips appealed to the Alabama Supreme Court; that court transferred the appeal to this court, pursuant to § 12-2-7, Ala. Code 1975.
"When reviewing a ruling on a motion for a JML [judgment as a matter of law], this Court uses the same standard the trial court used initially in granting or denying a JML. Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. For actions filed after June 11, 1987, the nonmovant must present ‘substantial evidence’ in order to withstand a motion for a JML. A reviewing *454 court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling.”
Delchamps, Inc. v. Bryant, 738 So.2d 824, 830-31 (Ala.1999) (citations omitted).
Section 25-5-11.1, Ala.Code 1975, provides that “[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers’ compensation benefits under this chapter....” While § 25-5-11.1 refers to “action[sj” to recover workers’ compensation benefits, our Supreme Court has interpreted § 25-5-11.1 “as covering even the filing of a claim for workers’ compensation benefits.” Tyson Foods, Inc. v. McCollum, 881 So.2d 976, 982 (Ala.2003) (citing McClain v. Birmingham Coca-Cola Bottling Co., 578 So.2d 1299 (Ala.1991)).
Phillips contends that “[m]ost ... decisions appear to accept proof of the employer’s awareness of a work-related injury in lieu of, i.e., as satisfactory proof of, the ‘filing of a workers’ compensation claim’ for purposes of establishing a prima facie case under § 25-5-11.1.” Phillips cites Dunn v. Comcast Corp., 781 So.2d 940 (Ala.2000), in support of this contention. In Dunn, the Court stated that in order to make out a prima facie case of retaliatory discharge, a plaintiff must show: “(1) an employment relationship; (2) an on-the-job injury; (3) notice to the employer of the on-the-job injury; and (4) subsequent termination of employment.” Dunn, 781 So.2d at 943.
However, in Alabama Power Co. v. Aldridge, 854 So.2d 554 (Ala.2002), our Supreme Court explicitly expounded on the elements of retaliatory discharge listed in Dunn, clarifying what was required for a plaintiff to make out a prima facie case:
“Implicit in our Dunn reasoning was the necessity for a causal link between the plaintiff’s filing of a workers’ compensation claim and his subsequent discharge. ... If the only showings required to establish a prima facie case were the four explicitly listed in Dunn and quoted by the trial court, there would be no ‘inference that the discharge was retaliatory’ and no need for the burden of proof to shift from the employee to the employer.”
Alabama Power Co. v. Aldridge, 854 So.2d at 562-63 (emphasis added). Because of this necessity to establish a causal link between the discharge and the workers’ compensation claim, the Court in Aldridge deemed it necessary to restate the elements of a prima facie case of retaliatory discharge:
“In order for an employee to establish a prima facie case of retaliatory discharge the employee must show: 1) an employment relationship, 2) an on-the-job injury, 3) knowledge on the part of the employer of the on-the-job injury, and 4) subsequent termination of employment based solely upon the employee’s on-the-job injury and the filing of a workers’ compensation claim.”
Aldridge, 854 So.2d at 563 (emphasis added).
Thus, despite Phillips’s claim to the contrary, knowledge of an on-the-job injury on the part of the employer is not sufficient proof of filing a workers’ compensation claim. It is clear from Aldridge that “§ 25-5-11.1 demands that there be *455 specific knowledge of the plaintiffs claim for benefits on the part of the one who terminated the plaintiff, and that that knowledge be the sole motivating force behind the termination.” Tyson Foods, Inc. v. McCollum, 881 So.2d at 983 (first emphasis added; second emphasis in original; some emphasis omitted). Therefore, “[w]hile [the employee’s supervisor] may have had knowledge of [the employee’s] on-the-job injury, it is neither necessary nor prudent, on that basis alone, to impute to [the employee’s supervisor] knowledge of [the employee’s] filing of a workers’ compensation claim.” McCollum, 881 So.2d at 983; see also Coca-Cola Bottling Co. Consol, v. Hollander, 885 So.2d 125, 130 (Ala.2003) (plurality opinion) (“[Section] 25-5-11.1 requires that knowledge of the employee’s filing of a workers’ compensation claim be the sole motivating force behind the termination of employment. In order to establish a prima facie case, the plaintiff must demonstrate, by substantial evidence, a direct and distinct causal link between one having knowledge of the plaintiffs workers’ compensation claim and the termination.”).
Phillips contends that his “filing” of a claim may be implied from the facts that he was assigned light-duty work after his injury, that human resources manager Pamela Ray volunteered to answer any questions that Phillips might have about the workers’ compensation process, and that Ray told Phillips to make sure that he had his medical bills paid by the company. However, Sentinel voluntarily moved Phillips to a light-duty position after his injury, Phillips admitted that he did not ask Ray any questions about the workers’ compensation process, and the discussion about the doctor’s bill merely demonstrates what was already admitted: that Sentinel paid for Phillips’s medical expenses pertaining to the injury. This argument from implication avoids the simple fact that Phillips failed to testify or introduce documents indicating that he filed a workers’ compensation claim with Sentinel before his employment was terminated.
As a counter to this fact, Phillips argues that Alabama cases do not clearly detail what “filing” a workers’ compensation claim entails. However, at the least it is plain that “filing” a workers’ compensation claim involves the employee notifying the employer of his decision to exercise his right to claim workers’ compensation benefits. Moreover, it is evident from Al-dridge, other cases, and Code sections that “filing” is a distinct act of the employee, not something to be left to implication. “Section 25-5-11.1 was clearly designed to prohibit employers from terminating employees in retaliation for their decision to file a claim for worker’s compensation benefits.” McClain v. Birmingham Coca-Cola Bottling Co., 578 So.2d at 1301 (emphasis added). Indeed, if “filing” a claim were not a distinct act, there would have been no need for our Supreme Court to conclude, as it did in Smith v. Dunlop Tire Corp., 663 So.2d 914, 915 (Ala.1995), or for this court to conclude, as it did in Rothenberger v. Cast Products, Inc., 716 So.2d 1220 (Ala.Civ.App.1997), that “a ‘First Report of Injury’ [filed] with the employer, in accordance with the Alabama Workers’ Compensation Act” satisfies the requirement of “filfing] a workers’ compensation claim.” Rothenberger, 716 So.2d at 1221. See also § 25-5-8(g)(2), Ala.Code 1975 (providing for sanctions for the filing of a fraudulent claim for workers’ compensation benefits); § 13A-11-124, Ala.Code 1975 (to like effect).
Phillips implores us to look at the “spirit” of the workers’ compensation scheme and to remember that “we construe workers’ compensation statutes liberally in favor of the employee in order to achieve the beneficent purposes of the workers’ com *456 pensation laws,” Scott Bridge Co. v. Wright, 883 So.2d 1221, 1224 (Ala.2003). No amount of “liberal construction,” however, can get past a simple failure of presentation of proof for a prima facie case. The purpose of the retaliatory-discharge prohibition is to prevent termination from employment “solely” because an employee has filed a claim or action .for workers’ compensation benefits. See § 25-5-11.1, Ala.Code 1975. By definition, such a cause of action requires a plaintiff to demonstrate that his or her employment was terminated because of the claim, which means that a plaintiff must show that he or she invoked his or her right to the claim before termination. Phillips all but admits that he did not do this by asking us to infer it from general circumstances.
Beyond his own testimony and the circumstances surrounding his claim, Phillips repeatedly relies upon the existence of the Agreement as proof that’he met his prima facie burden. First, he argues that the trial court could have taken judicial notice that he filed his claim by considering the Agreement. “ ‘ “A court may take judicial notice of matters ’generally known to the court and not subject to reasonable dispute. This includes matters of record in its own proceedings.” ’ ” A.W.G. v. Jefferson County Dep’t of Human Res., 861 So.2d 400, 410 (Ala.Civ.App.2003) (Crawley, J., concurring specially) (quoting Y.M. v. Jefferson County Dep’t of Human Res., 890 So.2d 103, 113 (Ala.Civ.App.2003) (plurality opinion)). However, the Agreement merely establishes that Phillips had a claim for workers’ compensation benefits; it does not tell us whether or when he filed one. Moreover, “[wjhether to take judicial notice of a fact is in the discretion of the trial court.” Henry v. Butts, 591 So.2d 849, 852 (Ala.1991). Phillips in essence asks us to hold that the trial court abused its discretion by refusing to take judicial notice of an element of his burden of proof. There was no error in refusing to do so.
Phillips also maintains that Sentinel is judicially or collaterally estopped from arguing that he did not file a claim because it approved the Agreement that acknowledged that Phillips sustained a workplace injury and that Sentinel had paid all of his medical bills for said injury. “ ‘Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.’ ” Bowers v. Wal-Mart Stores, Inc., 827 So.2d 63, 67 n. 2 (Ala.2001) (quoting Pegram v. Herdrich, 530 U.S. 211, 228 n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)). Sentinel did not argue that Phillips did not sustain a workplace injury, that it did not pay his medical bills, or that it would not compensate him for the injury, which is what the Agreement stipulates; it argued that Phillips failed to demonstrate that he filed a workers’ compensation claim before his employment was terminated, which is a separate argument, and as such is not barred by judicial estoppel.
For collateral estoppel to apply: “(1) The issue must be identical to the one involved in the previous suit; (2) the issue must have been actually litigated in the prior action; and, (3) the resolution of the issue must have been necessary to the prior judgment.” Martin v. Reed, 480 So.2d 1180, 1182 (Ala.1985). Again, however, the Agreement does not settle the issues of whether or when Phillips filed his workers’ compensation claim. Thus, Sentinel did not relitigate the issues settled in the Agreement, and collateral estoppel consequently does not apply.
The Alabama Pattern Jury Instruction on retaliatory discharge states, in pertinent part:
*457 “[T]he burden is upon the plaintiff to reasonably satisfy [the jury] from the evidence of each of the following:
“(1) that the plaintiff was an employee of the defendant at the time he was injured,
“(2) that the plaintiff claimed Workers’ Compensation benefits (or sought to recover Workers’ Compensation benefits) before he/she was terminated,
“(3) that the plaintiff was terminated from his/her work by the defendant.”
2 Alabama Pattern Jury Instructions— Civil § 41.06 (2d ed. 2004 Supp.) (emphasis added). The trial court concluded that Phillips did not produce substantial evidence of the second requirement, and, thus, it granted Sentinel’s motion for a judgment as a matter of law. We find no error in that decision based on the record or on the law. The trial court’s judgment is therefore affirmed.
The appellant’s request for the award of an attorney fee on appeal is denied.
AFFIRMED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.