BOLIN, Justice.
Del Marsh, Gerald Dial, Jay Love, and Chad Fincher (hereinafter collectively referred to as “the defendants”) were members of the Alabama Legislature during its 2013 Regular Session. The defendants seek a writ of mandamus ordering the Montgomery Circuit Court to set aside its order denying their motion to dismiss an action against them filed by Lynn Pettway and to enter an order granting the motion.

Facts and Procedural History

The Alabama House of Representatives approved House Bill 84 (“HB 84”), relating to education, and the bill was sent to the *746 Senate, where the Senate Education Committee gave it a favorable report. On February 28, 2013, during the third reading of HB 84 on the floor of the Senate, an amendment was proposed and approved, and HB 84 was passed by the Senate. The amended version of HB 84 was then sent to the House, but the House voted to “non concur,” and HB 84 was sent to a conference committee. Representative Chad Fincher and Representative Jay Love were appointed to the conference committee, and, pursuant to Rule 21 of the Joint Rules of the Alabama Legislature, Representative Laura Hall was the house minority appointee. Senator Del Marsh and Senator Gerald Dial were appointed to the conference committee, and Senator Quinton Ross was appointed as the Senate minority appointee.
Notice was issued announcing that the conference committee would meet at 8:15 p.m. The meeting was called to order but was immediately recessed to reconvene at 4:15 p.m. The minority appointees, interested citizens, and media representatives returned at 4:15; however, the defendants did not return until 5:00 p.m., at which time they distributed a “substitute” version of HB 84. The substitute version was 21 pages longer than the original, the name had been changed to the “Alabama Accountability Act of 2013,” and multiple new provisions had been added. The defendants’ votes in favor of the substitute version carried, and the defendants signed the committee report stating that the substituted HB 84 was passed by the committee. Subsequently, HB 84 was then sent to the House and the Senate for approval. The House and the Senate adopted the substitute version of HB 84.
Rule 21 provides, in pertinent part:
“A Committee on Conference on an appropriation bill shall address differences in monetary amounts or language differences between the House-passed and Senate-passed versions of the pending legislation. The Committee on Conference shall not introduce a new appropriation item, earmark funds for any item that did not appear in either the House-passed or Senate-passed version, or propose new language that did not appear in either the House-passed or Senate-passed version. The conference committee shall not increase the appropriation to any entity above the higher amount passed by either the House or Senate. The provisions in this paragraph may be suspended as to particular items of appropriation or language by a majority recorded vote of the House membership and a majority recorded vote of the Senate membership.”
On March 4, 2013, Pettway sued the defendants in the Montgomery Circuit Court seeking injunctive and declaratory relief. Pettway alleged that HB 84 was passed in violation of Rule 21 and Alabama’s Open Meetings Act (§ 36-25A-1 et seq., Ala.Code 1975). The circuit court issued a temporary restraining order (“TRO”) prohibiting the clerk of the House of Representatives from sending HB 84 to the governor for his signature, and the defendants appealed. On March 13, 2013, this Court issued an order vacating the TRO, dismissing the underlying action, and dismissing the appeal on the ground that the dispute was not ripe for adjudication because HB 84 had not been signed into law or even taken on the color of law. Chief Justice Moore issued an opinion concurring specially with the Court’s order. See Marsh v. Pettway, 109 So.3d 1118 (Ala.2013) (Moore, C.J., concurring specially). On March 14, 2013, the governor signed HB 84, making the Alabama Accountability Act law.
On March 18, 2013, Pettway filed a new complaint seeking injunctive and declara *747 tory relief and filed a motion for leave to serve the defendants, which the circuit court granted. Pettway named the same defendants and alleged that because they constituted a majority of the conference committee, the private meeting at which HB 84 was revised was a de facto meeting of the conference committee. Therefore, alleged Pettway, that private meeting was an “unannounced executive session” and violated both the Open Meetings Act and Rule 21. The new complaint asked for a judgment declaring the Alabama Accountability Act void as the result of multiple violations of the Open Meetings Act and Rule 21. The defendants moved to dismiss the complaint and to quash service. The circuit court denied the defendants’ motion but issued a stay of the proceedings and certified the following issue for permissive appeal:
“Whether a circuit court must dismiss and quash service of a complaint — filed during a legislative session and naming as defendants sitting Alabama legislators — based on principles of absolute legislative immunity and non-justiciability (i.e., lack of subject matter jurisdiction) where the complaint, on its face, raises claims challenging acts that are indisputably legislative activities.”
Because the proceedings have been stayed, the defendants have not been served with notice of the new complaint.
On April 4, 2013, the defendants filed a petition for permissive appeal pursuant to Rule 5, Ala. R. Civ. P. That same day, the defendants filed a petition for a writ of mandamus as an alternative to their permissive-appeal petition. The defendants contended that the circuit court exceeded its discretion in refusing to dismiss Pett-way’s new complaint for lack of subject-matter jurisdiction based on their absolute immunity as legislators and because Pett-way’s claims cannot be addressed without violating the separation-of-powers doctrine. On April 23, 2013, this Court denied the defendants’ petition for a permissive appeal. Ex parte Marsh (No. 1120779, April 23, 2013). That same day, we ordered answer and briefs in the mandamus proceeding.

Standard of Review

The defendants seek a writ of mandamus on the grounds of immunity and subject-matter jurisdiction. A writ of mandamus is an appropriate means for seeking review of an order denying immunity. Ex parte Simpson, 36 So.3d 15 (Ala.2009)(holding that mayor was entitled to legislative immunity for post-election participation in the passing of a zoning ordinance). Likewise, subject-matter jurisdiction is reviewable by a petition for a writ of mandamus. Ex parte Liberty Nat’l Life Ins. Co., 888 So.2d 478 (Ala.2003). However, for the writ to be issued, “ ‘ “[t]he right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief.” ’ ” Ex parte Vance, 900 So.2d 394, 398-99 (Ala.2004)(quoting Goolsby v. Green, 431 So.2d 955, 958 (Ala.1983), quoting in turn Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 102 (Ala.1981)).
“This Court has consistently held that the writ of mandamus is an extraordinary and drastic writ and that a party seeking such a writ must meet certain criteria. We will issue the writ of mandamus only when (1) the petitioner has a clear legal right to the relief sought; (2) the respondent has an imperative duty to perform and has refused to do so; (3) the petitioner has no other adequate remedy; and (4) this Court’s jurisdiction is properly invoked. Ex parte Mercury Fin. Corp., 715 So.2d 196, 198 (Ala.1997).”
*748 Ex parte Flint Constr. Co., 775 So.2d 805, 808 (Ala.2000).

Discussion

The defendants argue that the separation of the branches of Alabama government (Ala. Const.1901, Art. Ill, §§ 42, 43) is the basis for providing a specific protection to Alabama legislators in the Alabama Constitution:
“Members of the legislature shall, in all cases, except treason, felony, violation of their oath of office, and breach of the peace, be privileged from arrest during their attendance at the session of their respective houses, and in going to and returning from the same; and for any speech or debate in either house shall not be questioned in any other place.”
Art. IV, § 56. Additionally, § 29-1-7, Ala.Code 1975, provides:
“(a) Members of the Legislature of Alabama shall in all cases, except treason, felony and breach of the peace, be privileged from arrest and shall not be subject to service of any summons, citation or other civil process during their attendance at the session of their respective houses and in going to and returning from the same.
“(b) Whoever knowingly and willfully denies to any member of the Legislature the privilege and immunity granted herein is guilty of a misdemeanor and, upon conviction, shall be punished by fine not exceeding $1,000.00 or by imprisonment for not more than one year, or by both.”
The defendants assert that the purpose of the “speech or debate clause” of § 56 is the protection of legislators from distractions and loss of time, energy, and attention needed for performing legislative tasks; therefore, the speech or debate clause protects legislators not only from liability (i.e., the ultimate consequence of litigation), “but also from the burden of defending themselves.” Dombrowski v. Eastland, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967). The defendants contend that all the allegations in Pettway’s new complaint directly concern and challenge internal legislative activities.
The “speech or debate clause” of § 56 “ ‘protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.’ ” Marion v. Hall, 429 So.2d 937, 944 (Ala.1983) (Torbert, C.J., concurring specially, and quoting United States v. Brewster, 408 U.S. 501, 507, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1971)). In Brewster, the Supreme Court addressed an issue involving the “Speech or Debate” Clause, U.S. Const., Art. I, § 6, which provides, in pertinent part: “[F]or any Speech or Debate in either House, [senators and representatives] shall not be questioned in any other Place.” The Supreme Court, interpreting the federal constitutional provision, has observed that a member of Congress is immune from suit if the basis of the prosecution is a legislative act or the motivation for a legislative act. In thus defining what constitutes a legislative act, the Supreme Court stated:
“A legislative act has consistently been defined as an act generally done in Congress in relation to the business before it. In sum, the Speech or Debate Clause prohibits inquiry only into those things generally said or done in the House or the Senate in the performance of official duties and into the motivation for those acts.”
408 U.S. at 512.
In Bogan v. Scott-Harris, 523 U.S. 44, 52, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998), the Supreme Court stated:
*749 “The rationales for according absolute immunity to federal, state, and regional legislators apply with equal force to local legislators. Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability. See Spallone v. United States, 493 U.S. 265, 279 (1990)(noting, in the context of addressing local legislative action, that ‘any restriction on a legislator’s freedom undermines the “public good” by interfering with the rights of the people to representation in the democratic process’); see also Kilbourn v. Thompson, 103 U.S. [168], at 201-204 [(1881)] (federal legislators); Tenney [v. Brandhove, 341 U.S. 367], at 377 [(1951)] (state legislators); Lake Country Estates[ Inc., v. Tahoe Reg’l Planning Agency], 440 U.S. [391], at 405 [(1979)] (regional legislators). Furthermore, the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace. See Tenney, supra, at 377 (citing ‘the cost and inconvenience and distractions of a trial’). And the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability. See Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982).”
In Hillman v. Yarbrough, 936 So.2d 1056 (Ala.2006), a consulting engineer sued a county commissioner, the county commission, and a local newspaper, alleging that the commissioner’s comments relating to the engineer’s performance on a county project were slanderous. This Court adopted the Supreme Court’s reasoning in Brewster and Bogan. “In order to promote the public welfare, Alabama law has conferred upon members of legislative bodies an absolute privilege from certain causes of action stemming from the performance of their legislative functions.” Butler v. Town of Argo, 871 So.2d 1, 23 (Ala.2003). Legislative immunity prevents probes “for evidence with which to support the litigant’s challenge to a legislative decision as improperly motivated, procedurally defective, or otherwise infirm.” Dyas v. City of Fairhope, No. 08-0232, Sept. 24, 2009 (S.D.Ala.2009) (not reported in F.Supp.2d).
In the present case, Pettway’s new complaint concerns allegations regarding the procedural history of the Alabama Accountability Act. The allegations challenge the actions of legislators during the conference-committee hearing; the substitute version of HB 84; and the passage of the substitute version of HB 84. The defendants’ actions are clearly within the “sphere of legitimate legislative activity,” Bogan, 523 U.S. at 54, i.e., those matters that are “an integral part of the deliberative and communicative process by which [legislators] participated in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation.” Gravel v. United States, 408 U.S. 606, 625, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). Conduct at legislative meetings such as the conduct involved here falls within the penumbra of the speech or debate clause of § 56.
We recognize that § 29-1-7 is an extension of the legislative immunity set out in § 56 and provides that legislators are protected from service of process during the legislative session. In arguing that they are immune from suit, the defendants also contend that the circuit court exceeded its discretion in granting Pettway’s motion for leave -to serve them with process during *750 the legislative session. Although the circuit court granted Pettway’s motion for leave to serve, it subsequently stayed the proceedings. Because the defendants have not been served and because the legislature adjourned sine die on May 20, 2013, we find that the issue of service of process is now moot.
The defendants’ second argument is that the circuit court lacks subject-matter jurisdiction over this matter because Pettway’s claims are nonjusticiable. The defendants contend that for the circuit court to consider and rule on Pettway’s claims involving Rule 21 would involve “judicial second-guessing” of the legislature’s internal actions, motivations, and procedural decisions. Further, they argue that when the interpretation and application of the Open Meetings Act appears to controvert constitutional principles, the Act must give way because “ ‘the Alabama constitution has priority over the State Code.’ ” Pettway, 109 So.3d at 1123 (Moore, C.J., concurring specially, and quoting Bassett v. Newton, 658 So.2d 398, 400 (Ala.1995)).
Under the separation-of-powers provision, the Alabama Constitution gives the legislature the unlimited power to determine the rules governing its own proceedings unless another provision of the Alabama Constitution provides otherwise. Ala. Const. 1901, Art. IV, § 53; Birmingham-Jefferson Civic Ctr. Auth. v. City of Birmingham, 912 So.2d 204, 217 (Ala.2005)(“The power of the legislature to determine the rules of its own proceedings is ‘unlimited except as controlled by other provisions of our Constitution.’ ...”). “[U]nless controlled by other constitutional provisions, the courts cannot look to the wisdom or folly, the advantages or disadvantages of the rules which a legislative body adopts to govern its own proceedings.” ' Opinion of the Justices No. 185, 278 Ala. 522, 525, 179 So.2d 155, 158 (1965)(seeking an opinion relating to the validity of a Senate rule governing the procedure for terminating debate or invoking cloture).
In Goodwin v. State Board of Administration, 212 Ala. 453, 102 So. 718 (1925), the plaintiff alleged that an act was not legally passed because it violated a rule of the House of Representatives. This Court held that “[t]he rule not being required by the Constitution, but adopted by the House for its own convenience, the fact that it may have been overlooked or violated in the passage of the act did not impair its validity.” 212 Ala. at 455, 102 So. at 719. The rules controlling legislative procedure are usually formulated or adopted by legislative bodies themselves, and the observance of such rules is a matter that is entirely subject to legislative control and discretion and is not subject to review by a court unless the rules conflict with the constitution. Town of Brilliant v. City of Winfield, 752 So.2d 1192, 1198 (Ala.1999).
The Alabama Open Meetings Act provides that it is the public policy of this State that the deliberative process of governmental bodies shall be open to the public during meetings; it is applicable to the Alabama Legislature. § 36-25A-2(4), Ala. Code 1975. However, the question before us is whether the legislature’s alleged violation of the Opening Meetings Act is justi-ciable. Section 36-25A-8, Ala.Code 1975, recognizes that,
“[i]n addition to any existing applicable immunity, members of a governmental body and any of its employees participating in a meeting conducted in conformance with this chapter shall have an absolute privilege and immunity from suit for any statement made during the meeting which relates to an action pending before the governmental body.”
*751 (Emphasis added.) Existing applicable immunity for the legislature is legislative immunity conferred on the legislature by § 56. The Alabama Constitution does not require the legislature to conduct its meetings in public. Because the Alabama Constitution gives the legislature the authority to establish its own procedural rules and because the Open Meetings Act must yield to the Alabama Constitution, the legislature’s alleged violation of the Open Meetings Act or Rule 21 in this case is not justiciable. It is not the function of the judiciary to require the legislature to follow its own rules.

Conclusion

Based on the foregoing, we find that the defendants are entitled to a writ of mandamus ordering the circuit court to grant their motion to dismiss Pettway’s new complaint on the related grounds that legislators are immune from suit regarding acts undertaken within the sphere of legitimate legislative activity and because the substance of Pettway’s new complaint involves nonjusticiable claims that would lead to judicial second-guessing of the legislature’s internal actions, motivations, and procedural decisions regarding its actions.
PETITION GRANTED; WRIT ISSUED.
MOORE, C.J., and STUART, PARKER, MAIN, WISE, and BRYAN, JJ„ concur.
MURDOCK and SHAW, JJ„ concur in the result.