STUART, Justice
(concurring specially).
I agree with the majority that the record before us and the status report notifying this Court of Robert Bentley’s resignation from the office of Governor of Alabama establishes that this appeal and the underlying action are moot. The issue presented by this appeal and the underlying action, however, warrants addressing.
On April 26, 2016, the Alabama House of Representatives adopted House Rule 79.1, setting out the procedures for impeaching an official pursuant to Art. VII, § 173, Ala. Const. 1901.[1] House Rule 79.1(a) provides that, after the proper filing of articles of impeachment, the articles shall be referred to the House Judiciary Committee to investigate the allegations and to make a recommendation to the Alabama House of Representatives “as to whether cause exists to impeach the official.” House Rule 79.1(a)(1) and (2).
On April 28, 2016, 23 members of the House introduced House Resolution 367, proposing two articles of impeachment against then Governor Bentley: Article I alleged that Governor Bentley had “willfully neglected his duty as Governor by failing to faithfully execute the laws of this state and by refusing to perform his constitutional and statutory duties”; Article II alleged that Governor Bentley had “unlawfully misused state property, misappropriated state resources, and consistently acted in violation of law to promote his own personal agenda.” Pursuant to House Rule 79.1, the articles of impeachment were referred to the Judiciary Committee.
On June 16, 2016, pursuant to House Rule 79.1(c), the Judiciary Committee adopted “Committee Rules of the House Judiciary Committee for the Impeachment Investigation of Governor Robert Bentley.”[2] On September 27, 2016, the Judiciary Committee adopted “Amended Committee Rules of the House Judiciary Committee for the Impeachment Investigation of Governor Robert Bentley.” Pursuant to the Judiciary Committee’s amended Rule 13, the Judiciary Committee hired Jack Sharman of Lightfoot, Franklin & White, LLC, to serve as special counsel to the Judiciary Committee and to conduct an impeachment investigation of Governor Bentley.
On April 7, 2017, in anticipation of the issuance of Special Counsel Shaman’s investigative report, the Office of the Governor of Alabama and Governor Robert Bentley (hereinafter referred to collectively as “Governor Bentley”) filed a complaint in the Montgomery Circuit Court, asking the court to declare that Governor Bentley is entitled to due process in the impeachment proceedings, that the Judiciary Committee had violated Governor Bentley’s due-process rights, and that the manner in which the Judiciary Committee had “conducted the impeachment proceedings against Governor Bentley has exceeded the mandate of the House under Art. VII, § 173 and is in violation of the separation-of-powers doctrine.” Governor Bentley also moved the circuit court for an order temporarily enjoining and restraining the Judiciary Committee “from further abridging *581 and violating the Governor’s constitutional due-process rights and from taking any additional actions that exceed their legitimate impeachment authority in violation of the separation-of-powers doctrine embodied in the Alabama Constitution.” Specifically, Governor Bentley argued that the Judiciary Committee:
“a. prosecuted impermissibly vague and ambiguous articles of impeachment against the Governor;
“b. failed to give the Governor sufficient notice of the charges against him;
“c, improperly delegated the impeachment authority reserved for the House of Representatives to an unelected private lawyer;
“d. unlawfully limited the evidence the Governor may present in his own defense;
“e. deprived the Governor of the ability to confront and cross-examine witnesses against him;
“f. failed to adopt evidentiary standards to ensure the reliability of evidence presented to the Committee;
“g. refused to provide the Governor with exculpatory evidence; and
“h. refused to consider legal argument presented by the Governor.”
Following a hearing at which both Governor Bentley and the Judiciary Committee presented oral argument, the circuit court issued a temporary restraining order enjoining the Judiciary Committee from holding any hearings with regard to Special Counsel Sharmaris investigation of the articles of impeachment, from making any recommendation to the House of Representatives with regard to the impeachment of Governor Bentley, and from conducting any proceedings that did not afford Governor Bentley due process. The circuit court also entered an order scheduling a show-cause hearing for May 15, 2017.
That same day, April 7, 2017, the Alabama House of Representatives Judiciary Committee; Representative Mike Jones, chairman of the Alabama House of Representatives Judiciary Committee; Representative Jim Hill, vice chairman of the Alabama House of Representatives Judiciary Committee; Representative Marcel Black, ranking minority member of the Alabama House of Representatives Judiciary Committee; the remaining members of the Alabama House of Representatives Judiciary Committee (all hereinafter referred to collectively as “the Judiciary Committee”); and Representative Mac McCutcheon, Speaker of the Alabama House of Representatives, appealed the order of the Montgomery Circuit Court temporarily enjoining the Judiciary Committee from conducting hearings with regard to its investigation of the two articles of impeachment against Governor Robert Bentley. On April 8, 2017, this Court, ex mero motu, entered an order staying the circuit court’s temporary restraining order and ordering the parties to file briefs pursuant to an expedited schedule set forth in the Court’s order.
In its brief to this Court, the Judiciary Committee contends that the circuit court erred by enjoining its proceedings with regard to the articles of impeachment preferred against Governor Bentley because, it says, the matter presented in this case is nonjusticiable, i.e., that the court system— the judicial branch of government—does not have the constitutional authority to exercise jurisdiction over this matter by virtue of the doctrine of separation of powers.
“The Constitution of Alabama expressly adopts the doctrine of separation of powers that is only implicit in the Constitution of the United States. Opinion of the Justices No. 380, 892 So.2d 332, 334 n. 1 (Ala. 2004). This Court has said that the Alabama Constitution provides that the ‘three principal powers of government shall be exercised by sepa *582 rate departments,’ and it ‘expressly vest[s] the three great powers of government in three separate branches.’ Ex parte Jenkins, 723 So.2d 649, 653-54 (Ala. 1998). Section 42, Ala. Const. 1901, provides:
“ ‘The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.’
“Section 43 provides:
‘“In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.’
“ ‘ “Great care must be exercised by the courts not to usurp the functions of other departments of government. § 43, Constitution 1901. No branch of the government is so responsible for the autonomy of the several governmental units and branches as the judiciary.” ’ Piggly Wiggly No. 208, Inc. v. Dutton, 601 So.2d 907, 911 (Ala. 1992)(quoting Finch v. State, 271 Ala. 499, 503, 124 So.2d 825, 829 (1960)). Thus, just as this Court will declare legislative usurpation of the judicial power violative of the separation-of-powers provision of our Constitution, see, e.g„ Ex parte Jenkins, supra, so it must decline to exercise the judicial power when to do so would infringe upon the exercise of the legislative power.
“The separation-of-powers provision of the Alabama Constitution limits the jurisdiction of this Court.”
Birmingham-Jefferson Civic Ctr. Auth. v. City of Birmingham, 912 So.2d 204, 212 (Ala. 2005).
This Court has consistently held that the courts will not interfere in the legislature’s own proceedings. In Ex parte Marsh, 145 So.3d 744, 750 (Ala. 2013), this Court explained this principle as follows:
“Under the separation-of-powers provision, the Alabama Constitution gives the legislature the unlimited power to determine the rules governing its own proceedings unless another provision of the Alabama Constitution provides otherwise. Ala. Const. 1901, Art. IV, § 53; Birmingham-Jefferson Civic Ctr. Auth. v. City of Birmingham, 912 So.2d 204, 217 (Ala. 2005)(‘The power of the legislature to determine the rules of its own proceedings is “unlimited except as controlled by other provisions of our Constitution.” ...’). ‘[Ujnless controlled by other constitutional provisions, the courts cannot look to the wisdom or folly, the advantages or disadvantages of the rules which a legislative body adopts to govern its own proceedings.’ Opinion of the Justices No. 185, 278 Ala. 522, 525, 179 So.2d 155, 158 (1965)(seeking an opinion relating to the validity of a Senate rule governing the procedure for terminating debate or invoking cloture).
“In Goodwin v. State Board of Administration, 212 Ala. 453, 102 So. 718 (1925), the plaintiff alleged that an act was not legally passed because it violated a rule of the House of Representatives. This Court held that ‘[t]he rule not being required by the Constitution, but adopted by the House for its own convenience, the fact that it may have been overlooked or violated in the passage of the act did not impair its validity.’ 212 Ala. at 455, 102 So. at 719. The rules *583 controlling legislative procedure are usually formulated or adopted by legislative bodies themselves, and the observance of such rules is a matter that is entirely subject to legislative control and discretion and is not subject to review by a court unless the rules conflict with the constitution. Town of Brilliant v. City of Winfield, 752 So.2d 1192, 1198 (Ala. 1999).”
In Birmingham-Jefferson Civic Center Authority, 912 So.2d at 215, this Court discussed Nixon v. United States, 506 U.S. 224, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993), a case in which the Supreme Court of the United States considered an impeached federal judge’s argument that an internal rule of the United States Senate regarding impeachment proceedings was unconstitutional:
“In Nixon v. United States, 506 U.S. 224, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993), a former chief judge of the United States District Court for the Southern District of Mississippi, Judge Walter L. Nixon, was impeached by the United States House of Representatives and was convicted by the Senate. Nixon argued that Senate Rule XI, under which he was tried and convicted, was unconstitutional because it provided for a Senate committee, rather than for the full Senate, to participate in the evidentiary hearings.
“The first sentence of the Impeachment Trial Clause, Art. I, § 3, cl. 7, United States Constitution, states that ‘[t]he senate shall have the sole power to try all impeachments.’ The Supreme Court affirmed the lower court’s ruling that the matter is nonjusticiable, holding that the language of the Impeachment Trial Clause demonstrates a commitment of the matter of impeachments to the Senate. The Supreme Court explained that in order to determine whether there is a textually demonstrable constitutional commitment of an issue to a coordinate political department, a court must, in the first instance, interpret the text in question and determine to what extent the issue is textually committed. 506 U.S. at 228, 113 S.Ct. 732 (citing Powell v. McCormack, 395 U.S. 486, 519, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). The Supreme Court concluded that the first sentence of the Impeachment Trial Clause is a grant of authority to the Senate and that the word ‘sole’ indicates that the authority is reposed in the Senate and nowhere else. 506 U.S. at 229, 113 S.Ct. 732.”
Before the circuit court, Governor Bentley maintained that the Judiciary Committee was conducting “impeachment proceedings against the Chief Executive of the State of Alabama in [an] unconstitutional manner.” The judiciary’s consideration of this matter, however, is limited by the separation-of-powers provision of the Alabama Constitution.
Article VII, § 173, Ala. Const. 1901, provides that the House of Representatives has the responsibility “to consider the impeachment of the governor” and that, “[i]f the house of representatives prefer articles of impeachment,” then, following the procedure described in § 173, the governor may be removed from office
“for willful neglect of duty, corruption in office, incompetency, or intemperance in the use of intoxicating liquors or narcotics to such an extent, in view of the dignity of the office and importance of its duties, as unfits the officer for the discharge of such duties, or for any offense involving moral turpitude while in office, or committed under the color thereof, or connected therewith, by the senate sitting as a court of impeachment.”
Additionally, Art. IV, § 53, Ala. Const. 1901, provides that “[e]ach house shall have power to determine the rules of its proceedings.” Unequivocally, the method *584 of removal of the governor rests solely in the legislative branch of government. The Alabama House of Representatives is charged in § 173 with “considering” the impeachment of the governor and has the authority under § 53 to provide the rules to govern the consideration of impeachment, which may include an impeachment investigation, and the method for preferring articles of impeachment.
Here, in accordance with its constitutional duty set forth in Art. VII, § 173, and pursuant to Art. IV, § 53, the Alabama House of Representatives, in April 2016, adopted House Rule 79.1(c), providing that “[t]he [Judiciary Cjommittee shall adopt rules to govern the proceedings before it in order to ensure due process, fundamental fairness, and a thorough investigation, provided that the rules are not inconsistent with this rule.” The Judiciary Committee then adopted specific rules pursuant to Rule 79.1(c) governing the procedures for conducting the investigation of, and considering, the impeachment of Governor Bentley. Those actions are in accord—not in conflict—with the Alabama Constitution, which grants this Court no power to sit in judgment of those rules. See Ex parte Marsh, 145 So.3d at 751 (“It is not the function of the judiciary to require the legislature to follow its own rules.”).
Because the plain language of Art. VII, § 173, and Art. IV, § 53, Ala. Const. 1901, provides that the method of impeachment of the governor rests in the legislature, courts ai-e required to refrain from exercising judicial power over this matter. The exercise of such power would infringe upon the exercise of clearly defined legislative power. “The judicial branch of government must ‘“never exercise the legislative and executive powers, or either of them.”’” Birmingham-Jefferson Civic Ctr., 912 So.2d at 213 (quoting Ex parte James, 836 So.2d 813, 819 (Ala. 2002), quoting in turn Ala. Const. 1901, Art. III, § 43).
Because the authority to impeach the governor and the method by which to impeach the governor rests in the Alabama Legislature and is not a function of the judicial branch of government, this case presents a nonjusticiable matter over which the courts do not have jurisdiction.

. Article VII, § 173, Ala. Const. 1901, provides that the House of Representatives has the responsibility "to consider the impeachment of the governor, the lieutenant-governor, or other officer administering the office of the governor.”

. House Rule 79.1(c) provides that the Judiciary Committee "shall adopt rules to govern the proceedings before it in order to ensure due process, fundamental fairness, and a thorough investigation, provided that the rules are not inconsistent with this rule.”